Evans R. MILLER, January J. Belmont, Gloria Bryant, Irene Brodie, William Shaw, Harold Murphy, Howard Walton, Princeton McKinney, Roland (Ray) Ashley, Tyrone Crider, Willie Jordan, G.W. Brewton, Albert Sampson and Carl White and on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Richard PHELAN, Richard A. Siebel, Robert P. Gooley, Carl R. Hansen, Herbert Schumann, Mary M. McDonald and Allan C. Carr, all being suburban members of the Cook County Board, the Regional Transportation Authority, a Municipal Corporation and PACE, The Suburban Bus Division of the Regional Transportation Authority, Defendants.

No. 92 C 6597.

United States District Court, N.D. Illinois, E.D.

March 25, 1993.

William Elston, Jr., Roland M. Stewart, Roland M. Stewart, Sr. & Associates, Chicago, IL, Steven R. Miller, Hazel Crest, IL, for plaintiffs.

Margaret A. Glass, Asst. State's Atty., Hugh R. McCombs, Mayer, Brown & Platt, Robert C. Newman, Burke Bosselman & Weaver, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This civil rights action arises out of the appointment of a white man to the board of PACE, the suburban bus division of the Regional Transportation Authority ("RTA"), instead of African American plaintiff Evans R. Miller ("Miller"). Miller attempted to file a class action suit against the RTA, PACE, and the individual members of the Cook County Board responsible for the appointment.[1] The RTA and PACE, pursuant to Federal Rule of Civil Procedure 12(c), now move for judgment on the pleadings on Counts I and II. The individual defendants, pursuant to Federal Rule of Civil Procedure 12(b)(6) and on various other grounds, seek to dismiss the plaintiffs' complaint in its entirety. For the reasons set forth below, we grant the RTA and PACE's motion for judgment on the pleadings, and deny in part and grant in part the individual defendants' motion to dismiss the complaint.

### I. Factual Background[2]

The facts of this case are straightforward and largely undisputed. The RTA is responsible for providing public transportation within various Illinois counties. PACE is the Suburban Bus Division of the RTA, and is run by a Service Board comprised of appointed members drawn from six suburban regions. The Regional Transportation Authority Act delineates that when a vacancy arises, suburban members of the Cook County Board will appoint a director, from the appropriate region, to fill it. Ill.Rev.Stat. ch. 111⅔, ¶ 701.01, *et seq.* The only qualification

---

1. Due to their disregard of this Court's briefing schedule, we denied plaintiffs motion to certify a class under Local Rule 12(p) of the Northern District of Illinois.

2. For the purposes of these motions, we will, of course, take plaintiffs' well-pleaded allegations as true, and will only dismiss if it appears beyond doubt that plaintiff can set forth no facts entitling him to judgment.

is that applicants must be chief executive officers of municipalities within the region. *Id.*

In addition to Miller, plaintiffs include four African American mayors of Illinois municipalities, eligible, under Illinois law, for appointment to the PACE Board,[3] and nine African American residents of the community served by the PACE Board.

When the director for the South Region was convicted of a felony, leaving a vacancy on the Board, Miller, the chief executive officer of a municipality in the region, renewed his outstanding application for the position. Having relayed all relevant information, he was summoned to appear for a meeting of the appointing members of the Cook County Board on August 26, 1993. According to Miller, no notice of the meeting was published.

After Miller arrived, another candidate appeared. Although Miller had not spoken to any of the Cook County Board members, the other candidate, who was white, was invited into a room with at least some of the appointing members of the Cook County Board for an interview or consultation.[4] The white candidate's name was submitted along with Miller's, and the white candidate was appointed.

Miller, and the other plaintiffs, claim that the appointing members failed to consider or appoint him because of his race. Accordingly, they bring this action under 42 U.S.C. §§ 1981 and 1983[5] and Title VI, along with a pendent state claim for violation of the Illinois Open Meetings Act, Ill.Rev.Stat. ch. 102, ¶ 41 *et seq.* In Count I, plaintiffs ask for a declaration that defendants have been, and are, making appointments to the PACE Board in a racially discriminatory fashion, and an injunction against future discriminatory behavior. Count II charges defendants with violating the Illinois Open Meetings Act

by failing to publish notice of and take minutes during the appointment meeting.

## II. Discussion

### A. Judgment on the Pleadings

■ The RTA and PACE seek judgment on the pleadings with respect to both counts. Once the pleadings are closed, as they are here,[6] a motion for judgment on the pleadings is appropriate if the court determines that no material issue of fact remains and one party is entitled to judgment as a matter of law. *National Fidelity Life Ins. Co. v. Karaganis,* 811 F.2d 357 (7th Cir.1987). The RTA and PACE argue that, taking all of the plaintiffs allegations as true, there is no outstanding issue of material fact, and they are entitled to judgment as a matter of law on both counts. We find their arguments persuasive, and grant their motion.

#### (i) Count I

■ The RTA and PACE argue that "it is plain from the face of the pleadings that [they] had no involvement in the wrongful actions alleged by the plaintiffs." Def. Brief at p. 3. They point out, and plaintiffs do not dispute, that under Illinois law, the RTA and PACE have no authority to appoint members of the PACE Board. Ill.Rev.Stat. ch. 111⅔, ¶ 703A.02. Instead, the responsibility to fill the vacancy in the South Region lay with the suburban members of the Cook County Board. *Id.* Given their lack of authority over the appointment process, the two defendants contend that plaintiffs cannot obtain the relief they seek against either the RTA or PACE.

While plaintiffs do not contest the RTA and PACE's lack of formal authority, they argue that because the RTA and PACE "are part of a single authority that mainins [sic] administrative powers of review over the activities and operation of all divisions within the Authority, . . . . a reasonable inference can be drawn that defendants bear some

---

**3.** Although these four plaintiffs are qualified for appointment to the PACE Board, none of them has ever applied for the position.

**4.** The complaint does not indicate which Board members interviewed, or conversed with, the other candidate.

**5.** Miller claims that his due process and equal protection rights have been violated.

**6.** The RTA and PACE have answered the complaint and have not filed a counterclaim. Fed. R.Civ.P. 7(a).

responsibility for the alleged misconduct." Def. Brief at p. 6. Such a conclusory contention, unsupported by the pleadings, will not suffice to stay judgment on the pleadings.[7] The Act explicitly denies the RTA and PACE authority to control the appointment of Board members, limiting its domain to that of overseeing the Board's activity once appointed. Absent any role for either the RTA or PACE in the appointment process, relief is not available against them, and we grant judgment on the pleadings in their favor.[8]

#### (ii) Count II

■ The RTA and PACE also assert that because plaintiffs fail to allege that they had anything to do with the violation of the Open Meetings Act, we should grant them judgment on the pleadings with respect to Count II. We agree. Neither the RTA nor PACE called the meeting. Under the statute, then, they had no obligation to post notice of the meeting or to ensure that minutes be kept. Accordingly, we grant judgment on the pleadings on Count II in favor of the RTA and PACE.

### B. Motion to Dismiss Count I

The individual defendants seek to dismiss Count I on a variety of grounds. We will address them in turn.[9]

#### (i) Standing

Several of the grounds upon which the defendants seek dismissal devolve into the single issue of whether the plaintiffs have standing. Article III of the Constitution requires a party to have standing in order to involve a federal court in litigation. To have standing, a plaintiff "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). Defendants contend that plaintiffs, including Miller, have failed to allege injury and therefore lack standing. With the exception of Miller, we agree.

Other than Miller, who clearly suffered the direct injury of losing a position on the PACE Board as a result of defendants' alleged racial discrimination,[10] there are two categories of plaintiffs involved in this action. First, all of the plaintiffs are African American residents of the community served by the PACE Board. Second, four of the plaintiffs are current or former chief executive officers of Illinois municipalities who are eligible for appointment to the PACE Board. In order to assert standing, these plaintiffs must allege a particularized injury which is fairly traceable to defendants' alleged wrongful act.

#### (a) Community Residents

■ The community residents claim that the alleged discriminatory failure to appoint Miller has harmed them, but it is not clear whether they believe their rights have been violated by (1) the absence of Miller on the PACE Board, or (2) the allegedly discriminatory appointment process. In either case, the plaintiffs lack standing.

In order to bring a claim under §§ 1981 and 1983, a plaintiff must allege a violation of his constitutional rights, that is, an injury.

---

7. Plaintiffs' reliance on *Duncan v. Duckworth,* 644 F.2d 653 (7th Cir.1981), is unavailing. In *Duncan,* the court ruled that the administrator of a prison hospital could be held responsible for the poor care received by an inmate at the hands of the hospital staff. Unlike the administrator in *Duncan,* the RTA and PACE have no authority over the procedure at issue.

8. Even if members of the RTA and PACE were present at the meeting and lobbied against Miller with racial animus, they still had no authority over the outcome of the appointment process and cannot be held liable for any discrimination by the Cook County Board members.

9. At the outset, we dismiss defendant Herbert Schumann from this action. Although Schumann was named in the caption, plaintiffs do not refer to him anywhere in the complaint, and, consequently, have made no allegations against him. While the federal pleading requirements are liberal, they are not so liberal that a plaintiff need not actually name a defendant in the complaint and identify the allegations made against him. Because this may simply have been a clerical error, we grant plaintiffs leave to amend the complaint to include Schumann.

10. Defendants' contention that "there is no federally protected right to win election to public office [or].... federally protected right to be appointed to the PACE Board," misses the point. Miller has not alleged simply that he has a right to the appointment, but that he has a right to be considered without racial animus.

While plaintiffs have alleged discrimination against Miller, they have not alleged a cognizable violation of their own constitutional rights, or, consequently, an injury. *See New Christian Valley M.B. Church v. School Dist. 149*, 704 F.Supp. 868 (N.D.Ill.1989) (while plaintiffs need not be the direct victims of discrimination, they must have suffered injury as a result of defendant's conduct). At bottom, plaintiffs assert that the Cook County Board members have denied them the representation of an African American, of Miller, on the PACE Board. The Constitution, however, does not recognize a right to be represented by a person of a particular race, let alone the right to be represented by a particular person. Rather, the Constitution, and measures such as the Voting Rights Act, guarantee a fair political *process*. For these reasons, we do not read the complaint to state a violation of the residents' constitutional rights. Without such an injury, the residents have no cause of action under the relevant statutes.[11]

■ Nor do the residents have standing to assert a claim against the Cook County Board members for subverting the appointment process with racial discrimination. In order to have standing, plaintiffs must assert a particularized grievance. If the grievance is generalized, then plaintiffs lack standing to pursue it. *See Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 209, 94 S.Ct. 2925, 2926, 41 L.Ed.2d 706 (1974) (Court ruled that "while standing is not to be denied simply because many people [each] suffer the same injury," a citizen lacks standing if his adverse impact is " 'undifferentiated' from that of all other citizens.")[12] *See also Freedom from Religion Foundation, Inc. v. Zielke*, 845 F.2d 1463, 1468 (7th Cir.1988) ("[C]ourts will refrain from 'adjudicating "abstract questions of wide public significance" which amount to "generalized grievances," pervasively shared and most appropriately addressed in the representative branches.' "). When an appointment process is tainted by racial discrimination, all citizens

suffer. *See, e.g., Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 1365, 113 L.Ed.2d 411 (1991) (defendant has standing to object to use of discriminatory peremptories regardless of whether his race differs from that of the excluded juror); *Peters v. Kiff*, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972) (white defendant can bring due process claim when blacks are excluded from juries). Lacking a sufficiently particularized grievance, the community residents do not have standing to pursue this claim, and they are therefore dismissed.

#### (b) Eligible Appointees

■ Although they do not have standing as community residents, the four named plaintiffs who are current or past chief executive officers of Illinois municipalities may have standing as eligible appointees. These plaintiffs aver, in their brief, that "once the barriers of racial discrimination have been leveled, each of the named plaintiffs may present themselves for consideration as well." Pl. Brief at p. 14. They pointedly do not allege that they have ever submitted their names for appointment, let alone been rejected. The mayors' assertion exemplifies just the sort of speculative claim that the standing requirement is designed to address. Having never applied for appointment, and, therefore, having never been denied appointment on the basis of their race, no case in controversy exists with respect to these plaintiffs. The mayors, then, also lack standing to bring suit under the civil rights statutes and are dismissed from Count I.

### (ii) Failure to State a Claim

#### (a) Discrimination

The individual defendants contend that Miller's allegations are mere conclusions which fail to sufficiently allege intentional racial discrimination as required by the statutes. Although the elements of the three causes of action vary, all three of the invoked statutes require a plaintiff to allege facts

---

11. In much the same way, the residents have not alleged that *they* have been discriminated against, as required under Title VI. Accordingly, they lack standing under this statute as well.

12. Court viewed as irrelevant the possibility that "if respondents could not obtain judicial review of petitioners' action, 'then as a practical matter no one can.' " *Id.* at 227, 94 S.Ct. at 2935.

demonstrating racial discrimination. *Simmons v. John F. Kennedy Medical Center*, 727 F.Supp. 440 (N.D.Ill.1989) ("To sufficiently state a cause of action under 42 U.S.C. § 1981, the plaintiff must allege some facts that demonstrate that she was discriminated against because of her race."); *Patrick v. Staples*, 780 F.Supp. 1528 (N.D.Ind.1991) ("To state a claim under the Equal Protection Clause, a plaintiff must allege that a state actor intentionally discriminated against the plaintiff based upon his or her membership in a protected class.") (*citing Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir.1982)); 42 U.S.C. § 2000d ("No person in the United States shall, on the grounds of race ... be subjected to discrimination under any program or activity receiving Federal financial assistance."). At issue here is whether Miller has sufficiently alleged intentional discrimination.

Although this circuit has previously held civil rights plaintiffs to heightened pleading requirements,[13] in a recent opinion, the Supreme Court held this practice unconstitutional. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, —— U.S. ——, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (§ 1983 cases are governed by the same pleading rules as the majority of other federal civil actions). While there is little detail in the complaint, plaintiffs do allege that the white candidate and Miller were treated differently. Miller appeared for the meeting and was left to himself. On the other hand, at least some of the suburban Cook County Board members took the white candidate aside for a discussion or interview. Allegations of this disparate treatment put the defendants on notice of the conduct underlying the claim, and the alleged conduct itself supports an inference that the Cook County Board members treated Miller differently because of his race. Accordingly, plaintiffs have met their burden. *See Talley v. Leo J. Shapiro & Assoc., Inc.*, 713 F.Supp. 254, 257 (N.D.Ill.1989) (despite

lack of factual detail, § 1981 claim met pleading requirements because it provided defendant with notice of plaintiff's claim and the grounds underlying it).

### (b) Municipal Custom or Policy under § 1983

In their reply brief, defendants assert that Miller has not, and cannot, allege a county policy or custom as required under § 1983 in official capacity suits. In light of defendants' failure to raise this issue in its motion, we decline to reach it now.[14]

### (c) Financial Nexus under Title VI

Title VI provides that

[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d. To state a cause of action under Title VI, a plaintiff must allege that he is the intended beneficiary of, an applicant for, or a participant in a federally funded program. *Doe on Behalf of Doe v. St. Joseph's Hospital*, 788 F.2d 411 (7th Cir. 1986). Although Miller alleges that the RTA receives federal funds, he fails to allege that he is an intended beneficiary of the RTA generally, or a particular RTA program. In truth, the most likely beneficiaries of the RTA are the riders, not the Cook County Board members tapped to appoint the PACE Board.

While "a private cause of action lies if the alleged discrimination 'necessarily causes discrimination against the primary beneficiaries of the federal aid,'" Miller does not allege how it might be that discrimination in the appointment to the PACE Board results in discrimination against riders on the basis of race. *See Id.* at 421 (quoting *Trageser v. Libbie Rehabilitation Center*, 590 F.2d 87, 89 (4th Cir.1978), *cert. denied*, 442 U.S. 947, 99 S.Ct. 2895, 61 L.Ed.2d 318 (1979). Although

13. *See Sivard v. Pulaski County*, 959 F.2d 662 (7th Cir.1992) ("This Court demands that plaintiffs suing a municipal body under § 1983 plead with greater specificity than might ordinarily be required.").

14. Nonetheless, we observe that the Cook County Board members are the sort of policymakers whose single actions generally suffice to satisfy this requirement.

we can infer that African American residents will not have the benefit of Miller's representation, there is nothing in the complaint, beyond conclusory allegations, to suggest that the existing PACE Board cannot adequately serve the needs of African American bus riders. Miller, then, fails to state a cause of action under Title VI, and this claim is dismissed. *See Doe*, 788 F.2d at 421 (absent specific allegations of how discrimination against doctors resulted in discrimination against patients on the basis of race, plaintiff did not state a cause of action under Title VI).

### (iv) Immunity

■ Defendants ask us to consider whether they are immune from suit under §§ 1981 and 1983. Before we can address this issue, we must determine whether Miller has sued the suburban Cook County Board members in their official or individual capacities, or both. The law in this circuit is clear. If a civil rights plaintiff fails to specify whether he is bringing suit against the defendant in his official or individual capacity, courts will construe the suit as an action against the defendant in his official capacity only. *Yeksigian v. Nappi*, 900 F.2d 101 (7th Cir.1990) ("In the absence of any express statement that the parties are being sued in their individual capacities, an allegation that the defendants were acting under color of law generally is construed as a suit against the defendants in their official capacities only."); 704 F.Supp. 868. Since Miller failed to state in what capacity he is suing defendants, we construe this as an official capacity suit.

■ A suit against a county official, in turn, is tantamount to a suit against the county itself. *See Kentucky v. Graham*, 473 U.S. 159, 166–67 & n. 14, 105 S.Ct. 3099, 3105–06 & n. 14, 87 L.Ed.2d 114 (1985). As such, the doctrines of absolute and qualified immunity, designed to protect officials from damages under certain circumstances, do not apply here.

■ The only remaining immunity is that afforded to states under the Eleventh Amendment. This immunity is not available to municipalities or counties, which, after

*Monell v. Dept. of Soc. Svcs. of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1977), are considered persons within the meaning of § 1983. Because the Cook County Board is not an arm of the state, nor is there any reason to believe that it acted as an arm of the state in appointing a new member to the PACE Board, defendants are not immune from suit.

### (iv) Political Discretion

■ Finally, with regard to Count I, defendants argue that judicial intervention in this controversy would involve unwarranted interference with the Cook County Board's exercise of political discretion. We do not find this argument persuasive.

Defendants rely on *Mayor of the City of Philadelphia v. Educational Equality League*, 415 U.S. 605, 613, 94 S.Ct. 1323, 1330, 39 L.Ed.2d 630 (1974), for the proposition that federal courts may not interfere with the discretionary appointment powers of elected executive officers. Their reliance, however, is inapposite, as the Court in *Mayor of the City of Philadelphia* expressly left open the question of whether federal courts should intrude on a local executive's discretionary appointment power. *Id.* at 615, 94 S.Ct. at 1331 ("Were we to conclude that respondents had established racial discrimination in the selection process for the Panel, we would be compelled to address the 'problems' ... raised by the Mayor.") The Seventh Circuit, however, has at least partially filled this void, ruling that "[a] governmental officer holding the power of appointment may make any decision he pleases, *unless the Constitution bars the way.*" *Kurowski v. Krajewski*, 848 F.2d 767, 770 (7th Cir.1988), *cert. denied*, 488 U.S. 926, 109 S.Ct. 309, 102 L.Ed.2d 328 (1988) (emphasis added) (court held judge liable under § 1983 for improperly taking appointee's political views into account when choosing a public defender). Because Miller has alleged a constitutional violation, this controversy warrants judicial intervention.

### C. Count II

As with Count I, defendants seek dismissal of Count II on several grounds. We address their arguments as follows:

### (i) Standing

Defendants contend that none of the plaintiffs have, or can, allege harm arising from the purported violation of the Open Meetings Act. Thus, they argue, plaintiffs lack standing to bring Count II. *See Ciacco v. City of Elgin,* 85 Ill.App.3d 507, 511, 40 Ill.Dec. 877, 880, 407 N.E.2d 108, 111 (2nd Dist.1980).

### (a) Miller

 First, defendants point out that "[s]ince Plaintiff Miller was aware of the meeting and attended with his necessary credentials ... the alleged failure to publish a public notice and agenda of the appointment meeting clearly had no adverse effect [sic] upon him." Def. Brief at p. 11, n. 1. We agree. Miller alleges no injury, and, given his attendance at the meeting, we can discern none.[15]

 Miller further fails to allege any harm from the suburban Board members' failure to keep minutes of the closed meeting. Under the Act, a public body need not make the minutes of a closed meeting available until it is no longer necessary to protect the public interest. Ill.Rev.Stat. ch. 102, ¶ 42.-06(b). Miller has not alleged that the minutes of the August 26 meeting would be available to the public, nor does his complaint mention how he would use the minutes if he obtained them. Without allegations that the minutes would be useful and available, Miller has not pled an injury sufficient to confer standing.[16]

### (b) Residents

 As with Miller, the remaining named plaintiffs neglect to specify any injury caused by the defendants' alleged failure to abide by the notice and minutes requirements of the Open Meetings Act, nor is one discernible.

The meeting was closed, preempting a claim that the residents might have participated. Additionally, as mentioned above, even if the Cook County Board members had taken minutes, the complaint contains no allegations that the minutes would be useful to them, or that the minutes were ripe for release. Absent any injury, the residents lack standing.[17]

Because no plaintiff has standing to pursue a claim for violation of the Open Meetings Act, we dismiss Count II without further discussion.

### III. Conclusion

For the foregoing reasons, we grant the RTA and PACE's motion for judgment on the pleadings with respect to both Counts I and II, and deny in part and grant in part the individual defendants' motion to dismiss plaintiffs' complaint. It is so ordered.

---

15. It is possible that plaintiff believes he was harmed by the lack of community supporters present at the meeting. However, he has failed to allege such a harm, and, in light of his own awareness of the meeting and his presumed ability to gather supporters if he so desired, we decline to infer such a harm.

16. That is not to say that Miller could not allege an injury. In fact, it is hard to imagine a more appropriate plaintiff under the minutes provision of the Act than Miller, who seeks minutes of a

meeting in which county officials made an allegedly discriminatory decision.

17. Because the residents lack standing to bring a claim under the Open Meetings Act, we need not reach the interesting question waiting in the wings. That is, if one plaintiff in an action has standing to bring a federal claim, but not a pendent state claim, and another plaintiff has standing to bring the state claim, but not the federal claim, does the court have supplemental jurisdiction to hear the state claim?