Lillian E. BRYANT, Lillian W. Bryant, Carl Briscoe, Gustavia Ellis, Pierre Hollingsworth, Michael F. Johnson, Elwood S. Davis, First Ward Civic Association, Third Ward Civic Association and West Side Protective Homeowners Association, Plaintiffs,

v.

The NEW JERSEY DEPARTMENT OF TRANSPORTATION, The State of New Jersey, The South Jersey Transportation Authority, Mirage Resorts Incorporated, The New Jersey Transportation Trust Fund Authority and The Casino Reinvestment Development Authority, Defendants.

No. CIV. A. 97–1397.

United States District Court, D. New Jersey.

Feb. 17, 1998.

344

Stanley C. Van Ness, Karen L. Cayci, Herbert, Van Ness, Cayci & Goodell, Princeton, NJ, for Plaintiffs, Lillian E. Bryant, Lillian W. Bryant, Carl Briscoe, Gustavia Ellis, Pierre Hollingsworth, Michael F. Johnson, Elwood S. Davis, First Ward Civic Association, Third Ward Civic Association, West Side Protective Homeowners Association.

Edward N. Fitzpatrick, Benjamin Clarke, William J. Bailey, DeCotiis, Fitzpatrick & Gluck, Teaneck, NJ, for Defendant, Mirage Resorts, Inc.

Peter Verniero, Attorney General of New Jersey, Jeffrey J. Miller, Jerry Fischer, Assistant Attorneys General, Josh Lichtblau, Kevin Marc Schatz, Robert Marshall, Deputy Attorneys General, R.J. Hughes, Justice Complex, Trenton, NJ, for Defendants, State of New Jersey, New Jersey Department of Transportation, New Jersey Transportation Trust Fund Authority.

Thomas Edward Monahan, Jean L. Cipriani, Gilmore & Monahan, P.A., Toms River, NJ, for Defendant, South Jersey Transportation Authority.

Theodore W. Geiser, Patrick J. McAuley, Liza M. Walsh, Mark D. Haefner, Connell, Foley & Geiser, LLP, Roseland, NJ, for Defendant, Casino Reinvestment Development Authority.

Renee Steinhagen, Public Interest Law Center of New Jersey, An Appleseed Affiliate, Newark, NJ, Amicus Curiae.

OPINION

ORLOFSKY, District Judge.

This action arises out of the proposed construction of a highway and tunnel through what the plaintiffs describe as the last stable, middle-class African–American residential neighborhood in Atlantic City, New Jersey. This project would require the condemnation of at least nine homes in that neighborhood, and in addition, would allegedly create a variety of other adverse impacts on the community.[1] The plaintiffs in this case, who are residents of that community, and local neighborhood associations, filed this action for declaratory and injunctive relief under Title VI of the Civil Rights Act of 1964 and New Jersey's Coastal Area Facility Review Act ("CAFRA"). The plaintiffs seek to prevent the condemnation of their homes and the construction of the highway and tunnel. This Court's jurisdiction is premised upon 28 U.S.C. § 1331 and 42 U.S.C. § 2000d.

The defendants have moved to dismiss the complaint. As a threshold matter, I must first explore the prudential limitations on standing to sue under Title VI of the Civil Rights Act of 1964. Specifically, I must decide whether the Civil Rights Restoration Act of 1987 abrogated the so-called "Intended Beneficiary Doctrine" which limits standing under Title VI to intended beneficiaries of, applicants for, or participants in a federally funded program. For the reasons set forth below, I conclude that Title VI still requires a plaintiff to plead such a nexus to a federally funded program, and that the plaintiffs are not within the class of persons protected by Title VI. Therefore, their Title VI claim will be dismissed for lack of standing. I decline to exercise supplemental jurisdiction over the plaintiffs' state law claim. *See* 28 U.S.C. § 1367; *Trump*, 963 F.Supp. at 408. Accordingly, the plaintiffs' CAFRA claim will be dismissed without prejudice.

## I. BACKGROUND

For purposes of these motions to dismiss, I must accept as true the facts alleged in the Amended Complaint. *See RTC Mortgage Trust 1994 N–1 v. Fidelity National Title Insurance Co.*, 981 F.Supp. 334, 338 (D.N.J. 1997); *Porter v. United States*, 919 F.Supp. 927, 929 (E.D.Va.1996); *see also Suber v. Chrysler Corp.*, 104 F.3d 578, 581 (3d Cir. 1997). As part of an economic redevelopment project, the defendants, the State of New Jersey, the New Jersey Department of Transportation, the New Jersey Transportation Trust Fund Authority, the South Jersey Transportation Authority, the Casino Reinvestment Development Authority and Mirage Resorts, Inc. (collectively "Defendants"), agreed to cooperate in the financing and construction of a casino and entertainment complex on a site known as the "H-tract" in Atlantic City, New Jersey. *See* Amended Complaint at ¶¶ 1, 15–21.

To facilitate access to the new casino and entertainment complex, Defendants further agreed to construct a two-mile highway extension (the "Westside Bypass") connecting the Atlantic City Expressway to Brigantine Boulevard. *See id.* at ¶ 22. The Westside

---

1. This case represents the second recent challenge to the proposed construction of the highway and tunnel project designed to encourage Defendant, Mirage Resorts, Inc., to develop a hotel-casino and entertainment complex in Atlantic City. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 963 F.Supp. 395 (D.N.J. 1997).

Bypass would include a 2000–foot tunnel under the Venice Park community and a new ramp from the Atlantic City Expressway to the tunnel. *Id.* Construction of this project would require the acquisition and destruction of at least nine homes in Venice Park. *Id.* Funding for this project would be provided by the State of New Jersey, the South Jersey Transportation Authority, the Casino Reinvestment Development Authority and Mirage. *Id.* at ¶ 43. The plaintiffs further allege that the construction of the Westside Bypass "is an activity for which federal financial assistance is being received under [sic] the meaning of 42 U.S.C. § 2000d." *Id.* at ¶ 44.[2]

In January of 1997, Lillian E. Bryant, Lillian W. Bryant, Carl Briscoe, Gustavia Ellis, Pierre Hollingsworth, Michael F. Johnson and Elwood S. Davis, all African–American residents and taxpayers of Atlantic City, received condemnation notices in connection with the Westside Bypass project. *Id.* at ¶¶ 5, 30. The First Ward Civic Association, the Third Ward Civic Association and the West Side Protective Homeowners Association are neighborhood associations composed primarily of African–American residents and taxpayers of Atlantic City. *Id.* at ¶ 5.

On March 19, 1997, these individuals and associations (collectively "Plaintiffs") filed this action to prevent the condemnation of their homes and construction of the Westside Bypass. In addition to the threatened condemnation proceedings, Plaintiffs allege that "construction of the Westside Bypass will have a variety of adverse impacts, including air quality, traffic, wetlands, water quality, and community character impacts, as well as

other impacts." *Id.* at ¶ 45; *see also id.* at ¶¶ 31–37. Plaintiffs allege that the project will have a disparate impact on minority residents of Atlantic City and the Venice Beach community. *See, e.g., id.* at ¶ 3.

On March 31, 1997, Plaintiffs filed an Amended Complaint. In June, 1997 Defendants filed a series of motions to dismiss. On October 10, 1997, the Public Interest Law Center of New Jersey, Inc. ("PILC"), filed a motion for leave to file a brief as amicus curiae.[3]

## II. DISCUSSION

Plaintiffs seek declaratory and injunctive relief pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* Section 601 of that act provides:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d.

Defendants challenge Plaintiffs' standing to maintain this action by alleging, in essence, that Plaintiffs' interests do not fall within the zone of interests protected by Title VI. I conclude that the protections of Title VI extend only to persons with a direct nexus to the challenged federally funded program, and that such persons include only the intended beneficiaries of, applicants for, or participants in the federally funded program. In this case, Plaintiffs have not alleged such a nexus and their claims under Title VI will therefore be dismissed for lack of standing.

---

2. As I have noted above, for purposes of these motions, I must accept all the allegations of the plaintiffs' Amended Complaint as true. Whether federal funds have been, or will be received, for this project is unclear. *See Trump,* 963 F.Supp. at 404–06.

3. "The extent, if any, to which an *amicus curiae* should be permitted to participate in a pending action is solely within the broad discretion of the district court." *Waste Management v. York,* 162 F.R.D. 34, 36 (M.D.Pa.1995); *see Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.,* 149 F.R.D. 65, 82 (D.N.J.1993) ("District courts have broad discretion to appoint amicus curiae."). An *amicus curiae* brief may be accepted by the court

where it "provide[s] helpful analysis of the law." *See Bryant v. Better Business Bureau of Greater Maryland, Inc.,* 923 F.Supp. 720, 728 (D.Md. 1996) (citing *York,* 162 F.R.D. at 36). Defendants objected to the Court's consideration of PILC's brief for fear that it would delay a decision in this matter. PILC's brief, however, has not delayed disposition of these motions and, in fact, has been of considerable assistance to the Court. Thus, PILC's motion for leave to file an *amicus curiae* brief will be granted. I thank PILC for its willingness to participate in this litigation which is of considerable interest to the public, and for its insightful analysis of the legal issues presented.

## A. Legal Standards

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, I accept all well-pleaded allegations as true and draw all reasonable inferences in Plaintiffs' favor. *See, e.g., Schrob v. Catterson,* 948 F.2d 1402, 1405 (3d Cir.1991). Nevertheless, I will dismiss a claim if it appears certain that Plaintiffs cannot prove any set of facts which would entitle them to relief. *See. e.g., Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988). Moreover, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 1832–33, 104 L.Ed.2d 338 (1989) (noting that this procedure "streamlines litigation by dispensing with needless discovery and fact-finding"). It is improper to assume that plaintiffs can prove facts which they have not alleged. *Mruz v. Caring, Inc.,* —— F.Supp. ——, ——, 1998 WL 35379, *4–5 (D.N.J. Jan.28, 1998) (citing *Associated General Contractors of Calif. v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 902, 74 L.Ed.2d 723 (1983)).

Despite Defendants' reliance upon Rule 12(b)(6), their challenge to the jurisdictional predicate of standing is properly framed as a motion to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1). *See Xerox Corp. v. Genmoora Corp.,* 888 F.2d 345, 350 (5th Cir.1989) ("standing challenges are dealt with by motion under [Rule 12(b)(1) ]"); *Villareal v. Snow,* 1996 WL 28282, *1 (N.D.Ill. Jan.19, 1996) ("motion to dismiss based on plaintiff's alleged lack of standing would more appropriately have been brought as a 12(b)(1) motion, based on lack of subject matter jurisdiction"); *see generally Davis by Davis v. Philadelphia Housing Authority,* 121 F.3d 92, 94–95 (3d Cir.1997) (discussing "the distinction between a dismissal of a claim for lack of standing ... and a dismissal for failure to state a cause of action"). In considering a motion to dismiss for lack of jurisdiction, "the court should consider 'whether plaintiff[s'] allegations, standing alone and taken as true [plead] jurisdiction and a meritorious cause of action.'" *Porter v. United States,* 919 F.Supp. 927, 929 (E.D.Va.1996) (quoting *Dickey v. Greene,* 729

F.2d 957, 958 (4th Cir.1984)); *see Suber v. Chrysler Corp.,* 104 F.3d 578, 581 (3d Cir. 1997).

Standing requires satisfaction of both constitutional and prudential requirements. *See Bennett v. Spear,* —— U.S. ——, ——, 117 S.Ct. 1154, 1161, 137 L.Ed.2d 281 (1997); *Davis,* 121 F.3d at 96; *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,* 963 F.Supp. 395, 399–400 (D.N.J.1997). To maintain a suit in federal court, Article III of the Constitution requires, at a minimum, "[a] particularized injury-in-fact, which is actual or imminent, an injury that is fairly traceable to the conduct complained of, and an injury that can be redressed by a favorable decision." *Trump,* 963 F.Supp. at 399 n. 5 (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Federal courts also exercise prudential self-restraint by considering several additional factors. *See Davis,* 121 F.3d at 96; *see also Bennett,* —— U.S. at ——, 117 S.Ct. at 1161.

One of the prudential standing requirements is "that a plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit." *Bennett,* —— U.S. at ——, 117 S.Ct. at 1161; *see Trump,* 963 F.Supp. at 400; *Davis,* 121 F.3d at 96. Whether a plaintiff's claim arguably falls within the protected zone of interests must "be determined not by reference to the overall purpose of the Act in question ... but by reference to the particular provision of law upon which the plaintiff relies." *Bennett,* —— U.S. at ——, 117 S.Ct. at 1167.

## B. Applicable Provisions of Law

In order to analyze the standing issue with reference to the "particular provision of law" upon which Plaintiffs rely, *see Bennett,* —— U.S. at ——, 117 S.Ct. at 1167, I will first address Defendants' contentions that Title VI provides no private right of action to support Plaintiffs' claims. Count I of the Amended Complaint purports to state a cause of action pursuant to Section 601 of Title VI. Defendants contend that Section 601 neither provides nor implies a private right of action which can sustain Plaintiffs'

claims of discrimination on a disparate impact theory.

In *Alexander v. Choate,* 469 U.S. 287, 293, 105 S.Ct. 712, 716, 83 L.Ed.2d 661 (1985), the Supreme Court clarified its fragmented decision in *Guardians Association v. Civil Service Commission of the City of New York,* 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983), as determining that "Title VI itself directly reache[s] only instances of intentional discrimination." *Alexander,* 469 U.S. at 293. The Third Circuit recently confirmed that "[a] private right of action exists under section 601, but this right only reaches instances of intentional discrimination as opposed to instances of discriminatory effect or disparate impact." *Chester Residents Concerned for Quality Living v. Seif,* 132 F.3d 925, 929 (3d Cir.1997). In this case, Plaintiffs allege discrimination solely on the basis of disparate impact. *See* Amended Complaint at ¶¶ 2–3, 46–48. Therefore, Plaintiffs cannot avail themselves of a private right of action under Section 601.

Plaintiffs contend, however, that the Amended Complaint should be read to imply a cause of action pursuant to Section 602 of Title VI. Section 602 authorizes and directs federal agencies to promulgate regulations implementing the provisions of Section 601. *See* 42 U.S.C. § 2000d–1. Pursuant to Section 602, the Department of Transportation issued regulations which provide in relevant part:

> In determining the site or location of facilities, a recipient or applicant may not make selections with the purpose *or effect* of excluding persons from, denying them the benefits of, or subjecting them to discrimination under any program to which this regulation applies, on the grounds of race, color, or national origin; or with the purpose *or effect* of defeating or substantially impairing the accomplishment of the objectives of the Act or this part.

49 C.F.R. § 21.5(b)(3) (emphases added); *see also* 49 C.F.R. § 21.5(b)(2) (recipients may not "utilize criteria or methods of administration which have the effect of subjecting persons to discrimination because of their race, color, or national origin").

Although Plaintiffs' Amended Complaint actually cites only Section 601, as Judge Easterbrook of the Seventh Circuit observed: "Instead of asking whether the complaint points to the appropriate statute, a court should ask whether the relief is possible under any set of facts that could be established consistent with the allegations." *Bartholet v. Reishauer A.G. (Zurich),* 953 F.2d 1073, 1078 (7th Cir.1992) (citing, *e.g., Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see* Fed.R.Civ.P. 8. Thus, I will read the Amended Complaint to assert a cause of action under Section 602.

■ Defendants contend that, like Section 601, Section 602 does not afford Plaintiffs a private right of action. In *Alexander,* the Supreme Court interpreted *Guardians* as holding that "actions having an unjustifiable disparate impact on minorities could be redressed through agency regulations designed to implement the purposes of Title VI." *Alexander,* 469 U.S. at 293. In *Chester Residents,* however, the Third Circuit determined that neither *Guardians* nor *Alexander* definitively settled the availability of a private right of action under Section 602.

Nevertheless, after conducting its own analysis, the Third Circuit concluded that "private plaintiffs may maintain an action under discriminatory effect regulations promulgated by federal administrative agencies pursuant to section 602 of Title VI of the Civil Rights Act of 1964." *Chester Residents,* 132 F.3d 925, 937. Pursuant to Section 602, the Department of Transportation has issued regulations providing a private cause of action based on discriminatory impact. *See* 42 C.F.R. § 21.5(b)(3) (prohibiting certain actions "with the purpose *or effect*" of discriminating) (emphasis added); *see also New York Urban League, Inc. v. State of New York,* 71 F.3d 1031, 1036 (2d Cir.1995) (evaluating merits of disparate impact claim under 42 C.F.R. § 21.5(b)(2)). Consequently, Plaintiffs' claim of discrimination by disparate impact under Section 602 and 49 C.F.R. § 21.5 will not be dismissed for failure to state a claim upon which relief can be granted.

### C. The "Intended Beneficiary Doctrine"

Defendants contend that the Title VI claim must be dismissed because Plaintiffs have not alleged that they were the intended beneficiaries of the relevant federal financial assistance, and thus Plaintiffs lack standing to maintain an action under Title VI. The "Intended Beneficiary Doctrine" was developed in the 1970s and early 1980s, but is largely credited to the Seventh Circuit's seminal decision in *Simpson v. Reynolds Metals Co., Inc.,* 629 F.2d 1226 (7th Cir.1980).

In *Simpson,* the plaintiff sued his former employer for discriminatory firing under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, which tracks the language of Title VI. Based on its interpretation of Title VI, the Seventh Circuit affirmed the district court's dismissal of the claim "since plaintiff has not demonstrated any nexus between his discharge and the federal assistance." *Id.* at 1232.

The Seventh Circuit reached this conclusion by relying on two prior decisions under Title VI which determined, in dicta, that "to bring a private action under § 601, the plaintiff must be the intended beneficiary of, an applicant for, or a participant in a federally funded program." *Id.* at 1235 (characterizing *Carmi v. Metropolitan St. Louis Sewer District,* 620 F.2d 672 (8th Cir.1980), *cert. denied,* 449 U.S. 892, 101 S.Ct. 249, 66 L.Ed.2d 117 (1980), *and Trageser v. Libbie Rehabilitation Center,* 590 F.2d 87 (4th Cir. 1978), *cert. denied,* 442 U.S. 947, 99 S.Ct. 2895, 61 L.Ed.2d 318 (1979)).[4] In addition, the Seventh Circuit noted that "[t]he legislative history of Title VI also lends strong support to the conclusion that Congress did not intend to extend protection under Title VI to any person other than an intended beneficiary of federal financial assistance." *Simpson,* 629 F.2d at 1235 (citing, e.g., 110 Cong. Rec. 1518–21).

Thus, the Seventh Circuit identified the true essence of Title VI's standing requirement: a logical nexus between the federally funded "program or activity" and the "person" who is entitled to sue. *See Simpson,* 629 F.2d at 1235; *United States v. Harris Methodist Fort Worth,* 970 F.2d 94, 98 (5th Cir.1992); *cf. Association Against Discrimination v. City of Bridgeport,* 647 F.2d 256, 275–76 (2d Cir.1981), *cert. denied,* 455 U.S. 988, 102 S.Ct. 1611, 71 L.Ed.2d 847 (1982). That nexus, as stated in Section 601 itself and articulated by the courts, requires that a plaintiff be an intended beneficiary of, an applicant for, or a participant in a federally funded program. *See Simpson,* 629 F.2d at 1235; *Harris Methodist,* 970 F.2d at 99.

This requirement was widely cited and applied in the wake of *Simpson. See, e.g., Doe on Behalf of Doe v. St. Joseph's Hospital of Fort Wayne,* 788 F.2d 411 (7th Cir.1986) (reaffirming *Simpson* in an action brought under Title VI); *Mosley v. Clarksville Memorial Hospital,* 574 F.Supp. 224, 236 (M.D.Tenn.1983); *Ward v. Massachusetts Bay Transportation Authority,* 550 F.Supp. 1310, 1311 (D.Mass.1982); *see also Guardians Association v. Civil Service Commission of the City of New York,* 463 U.S. 582, 596, 103 S.Ct. 3221, 3229, 77 L.Ed.2d 866 (1983) (noting that recipient may be sued "by those for whose benefit the federal money was intended to be used"); *id.* at 636, 103 S.Ct. at 3250 (Congress "assumed that the intended beneficiaries of Title VI would be able to vindicate their rights in court") (Stevens, J., dissenting).

The Third Circuit also intimated its adherence to this doctrine. *See National Association for the Advancement of Colored People v. [Wilmington] Medical Center, Inc.,* 599 F.2d 1247 (3d Cir.1979) ("Being beneficiaries of government supported programs and facilities, plaintiffs are clearly 'persons' for whose 'especial benefit' Title VI and section 504 were enacted."); *Chowdhury v. Reading Hospital and Medical Center,* 677 F.2d 317,

---

**4.** *Carmi* and *Trageser,* like *Simpson,* arose under the Rehabilitation Act. The Supreme Court later overruled these decisions, but explicitly found its reasoning applicable only to the Rehabilitation Act. *See Consolidated Rail Corp. v. Darrone,* 465 U.S. 624, 104 S.Ct. 1248, 79 L.Ed.2d 568 (1984);

*see also North Haven Board of Education v. Bell,* 456 U.S. 512, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982) (Title IX). PILC correctly acknowledges that these decisions do not address Title VI. *See Amicus* Brief at 29.

320 n. 9 (3d Cir.1982) ("Although [*Wilmington*] *Medical Center* held that intended beneficiaries of a federally funded program have a private cause of action for declaratory and injunctive relief under Section 601, it is not clear whether the plaintiff here stands in the position of an intended beneficiary."), *cert. denied*, 463 U.S. 1229, 103 S.Ct. 3569, 77 L.Ed.2d 1411 (1983); *see also Sabol v. Board of Education of Willingboro*, 510 F.Supp. 892, 895 (D.N.J.1981) ("All parties agree that as with Title VI ... § 504 of Title V of the Rehabilitation Act requires for a claim to be actionable that the handicapped plaintiff be the intended beneficiary of or a participant in a federally funded program or activity.") (citing *Simpson* ).

I pause here to note an issue of terminology which appears to have caused some confusion in this case and throughout Title VI jurisprudence. In *Doe*, 788 F.2d 411, the Seventh Circuit, for convenience, referred to "the entire class of intended beneficiaries, applicants and participants" simply as "intended beneficiaries" throughout its opinion. *Id.* at 418 n. 11. I suspect that the *Doe* opinion gave rise to the phrase "Intended Beneficiary Doctrine." The Fifth Circuit, however, predicated its agreement with *Doe* on the fact that the Seventh Circuit "defined 'intended beneficiary' *all-inclusively* as the 'class of intended beneficiaries, applicants and participants' under § 601." *Harris Methodist*, 970 F.2d at 99 (emphasis added). The Fifth Circuit went on to adopt the rule of *Doe* "to the extent that Doe uses 'intended beneficiary' as a proxy for placing a logical limit on the class of persons who can benefit from § 601 as 'participants' in a federally funded program." *Harris Methodist*, 970 F.2d at 99. I concur in this reasoning and formulation of Title VI's standing requirements. In the interest of combining accuracy with brevity, I will refer to Title VI's standing requirement as the "*Simpson* Doctrine."

### D. The Civil Rights Restoration Act of 1987

Plaintiffs and PILC argue that the Intended Beneficiary Doctrine was effectively abrogated by the Civil Rights Restoration Act of 1987 ("CRRA"), 42 U.S.C. § 2000d–4a. While expanding the scope of the "program or activity," the CRRA did not eliminate the requirement that plaintiffs be intended beneficiaries of, applicants for, or participants in that program or activity.

The CRRA provides in relevant part that, for the purposes of Title VI:

the term "program or activity" and the term "program" mean all of the operations of—(1)(A) a department, agency, special purpose district, or other instrumentality of a State or local government; or (B) the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government.

42 U.S.C. § 2000d–4a. Thus, on its face, the CRRA addresses only the meaning of the terms "program or activity" and "program," but does not address the definition of a "person" who may sue under that statute.

This is consistent with the legislative history of the CRRA, upon which Plaintiffs attempt to rely. As the Third Circuit noted, "[t]he purpose of the amendment was to broaden the scope of coverage of Title VI in response to the Supreme Court's decision in *Grove City College v. Bell*, 465 U.S. 555, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984), where the Court narrowly construed the terms 'program or activity.' " *Chester Residents*, 132 F.3d 925, 933–34; *see* S.Rep. No. 100–64, at 2 (1987) (the purpose of the CRRA was "to overturn the Supreme Court's 1984 decision in *Grove City College v. Bell* "), *reprinted in* 1988 U.S.C.C.A.N. 3, 3–4; *see also* 20 U.S.C. § 1687 ("legislative action is necessary to restore the ... institution-wide application of [Title VI]").

In *Grove City College*, the Supreme Court held that the admissions office of the defendant college did not receive federal funds within the meaning of Title VI even though other divisions of the college did receive such funds. The Court thus restricted the scope of the "recipient" of federal financial assistance which may not discriminate under Title VI, but did not speak to the scope of the

meaning of "person" under Title VI against whom the recipient may not discriminate. *See Grove City College*, 465 U.S. 555, 104 S.Ct. 1211, 79 L.Ed.2d 516. Thus, the legislative history of the CRRA gives no indication that the Act altered in any way the definition of "person" protected by the statute.[5]

Moreover, courts across the country have continued to follow the *Simpson* Doctrine after the passage of the CRRA. *See, e.g., Jackson v. Katy Independent School District*, 951 F.Supp. 1293, 1298 (S.D.Tex.1996); *Chavez v. Illinois State Police*, 1996 WL 66136, *8 (N.D.Ill. Feb.13, 1996); *Butler v. Capitol Federal Savings*, 904 F.Supp. 1230, 1233 (D.Kan.1995); *Hodges v. Public Building Commission of Chicago*, 864 F.Supp. 1493, 1506 (N.D.Ill.1994); *Miller v. Phelan*, 845 F.Supp. 1201, 1207 (N.D.Ill.1993); *Allen v. City of Chicago*, 828 F.Supp. 543, 565 (N.D.Ill.1993); *Scelsa v. City University of New York*, 806 F.Supp. 1126, 1140 (S.D.N.Y. 1992).

District courts within this circuit have also followed the *Simpson* doctrine. *See, e.g., Wood v. Cohen*, 1997 WL 59324, *5 (E.D.Pa. Feb.12, 1997) ("[t]o sustain a Title VI claim, Wood must be the intended beneficiary of, an applicant for, or a participant in a federally funded program") (quotation omitted); *Foremanye v. University of Pennsylvania*, 1996 WL 684242, *2 (E.D.Pa. Nov.21, 1996) ("In order to establish standing to sue under [Title VI] plaintiffs must be the intended beneficiaries of the federal spending program.") (quotation omitted); *Glantz v. Automotive Service Association of Pennsylvania, Inc.*, 1991 WL 270017, *2 (E.D.Pa. Dec.11, 1991) ("A plaintiff bringing suit under this statute must allege that he or she is an intended beneficiary of the federal assistance."). For these reasons, I conclude that the CRRA did not abrogate the *Simpson* Doctrine.

### E. Dismissal as an Appropriate Remedy

■ Defendants seek dismissal of Plaintiffs' Title VI claim based on Plaintiffs' failure to plead facts necessary to determine their standing to sue. Although Plaintiffs and PILC have not cited them, a minority of courts have held that a Title VI claim should not be dismissed for failure to plead compliance with the *Simpson* Doctrine. In *Fobbs v. Holy Cross Health System Corp.*, 29 F.3d 1439 (9th Cir.1994), *cert. denied*, 513 U.S. 1127, 115 S.Ct. 936, 130 L.Ed.2d 881 (1995), the Ninth Circuit held that "[t]here is no requirement that plaintiff plead that he was an intended beneficiary of the federally funded program in which defendants are alleged to have participated." *Id.* at 1447. In support of its statement, the Ninth Circuit relied on *Wrenn v. State of Kansas*, 561 F.Supp. 1216 (D.Kan.1983).

In *Wrenn*, the court held that there was no requirement that the plaintiff plead that he was an intended beneficiary, but acknowledged that "[p]laintiff eventually must prove this fact." *Id.* at 1221. Rather, the court found that "a motion to dismiss is not the proper means by which to test the sufficiency of plaintiff's evidence." *Id.; accord Grimes v. Superior Home Health Care of Middle Tennessee, Inc.*, 929 F.Supp. 1088, 1092 (M.D.Tenn.1996); *Scelsa v. City University of New York*, 806 F.Supp. 1126, 1140 (S.D.N.Y.1992) ("While this need not be pleaded in plaintiff's filings, it must eventually be proven in order for plaintiffs to recover under this section.").

■ These cases ignore the fact that the *Simpson* Doctrine is a requirement of jurisdictional standing, and is therefore an appropriate issue for disposition on a motion to dismiss. *See, e.g., Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 350 (5th Cir.1989); *Villareal v. Snow*, 1996 WL 28282, *1 (N.D.Ill. Jan.19, 1996). After all, "[i]t is elementary that in all suits instituted in Federal Courts,

---

**5.** Plaintiffs note that the Senate Report characterizes *Simpson* as "read[ing] Section 504 narrowly." *See* S. Rep. at 10. The *Simpson* court, however, had addressed the very issue of concern to the drafters of the CRRA. *See Simpson*, 629 F.2d at 1233 n. 12. There, the Seventh circuit rejected the "'unified entity approach' in

defining what constitutes 'the program or activity receiving federal financial assistance' in this case." *Id.* Given the stated objectives of the CRRA, I conclude that the Senate Report was concerned with this discussion when it purported to distinguish *Simpson* and that the CRRA did not eliminate Title VI's standing requirements.

jurisdiction must be alleged affirmatively, and failure to plead jurisdictional facts is fatal to the maintenance of action." *Grazeski v. Federal Shipbuilding & Dry Dock Co.*, 76 F.Supp. 845, 846 (D.N.J.1948) (citing *McNutt v. General Motors Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936) ("If [the plaintiff] fails to make the necessary allegations he has no standing.")); *see also United States v. Hays*, 515 U.S. 737, 742, 115 S.Ct. 2431, 2435, 132 L.Ed.2d 635 (1995). The burden of demonstrating standing must be borne by Plaintiffs. *See Packard v. Provident National Bank*, 994 F.2d 1039, 1045 (3d Cir.1993) ("The person asserting jurisdiction bears the burden of showing that the case is properly before the court at all stages of the litigation."), *cert. denied*, 510 U.S. 964, 114 S.Ct. 440, 126 L.Ed.2d 373 (1993).

## F. Application of the Intended Beneficiary Doctrine

■ Defendants contend that Plaintiffs are not intended beneficiaries of the Westside Bypass project. I agree. In *Laramore v. Illinois Sports Facilities Authority*, 722 F.Supp. 443 (N.D.Ill.1989), the Illinois Sports Facilities Authority (an agency of the state), together with the City of Chicago and the Chicago White Sox baseball team, selected a predominantly minority neighborhood as a site for a new baseball stadium and negotiated with residents to purchase their homes in lieu of formal condemnation proceedings. Neighborhood residents sued, alleging, *inter alia*, violations of Title VI in that the defendants intentionally selected the site because it was a minority neighborhood. Relying on *Simpson*, the court found that the plaintiffs lacked standing to sue under Title VI because, even assuming that the defendants received federal financial assistance, "plaintiffs are not the intended beneficiaries of those benefits." *Id.* at 452. Plaintiffs in this case face the same dilemma, and I must reach the same conclusion.

Plaintiffs respond that they are intended beneficiaries because "the beneficiaries of the proposed road improvements in Atlantic City must purportedly be all citizens of the State of New Jersey and more particularly of Atlantic City." *See* Plaintiff's Opp. at 21.

Similarly, PILC contends that Plaintiffs, "as citizens of Atlantic City, are the intended beneficiaries of ... Defendants' operations in general, and the Westside Bypass, in particular, and therefore have standing to bring this action." *Amicus* Brief at 33.

These assertions, however, are belied by the allegations contained in the Amended Complaint. Plaintiffs allege that "[t]his project is being undertaken by [D]efendants ... in order to provide direct automobile access to the Huron North Tract site ... for the express purpose of permitting and encouraging [Mirage] to develop a hotel-casino and other entertainment facilities on the H-tract site." Amended Complaint at ¶ 1. By Plaintiffs' own admission, Mirage is the intended beneficiary of the project. The Third Circuit has stated that, "[i]n a case such as this, where the plaintiff's own pleadings aver facts which establish to a certainty that subject matter jurisdiction does not exist in the district court ... then the district court has no choice but to dismiss the action." *Heilman v. United States*, 731 F.2d 1104, 1111 (3d Cir.1984).

To the extent that potential casino patrons, residents of Atlantic City or residents of New Jersey would benefit from this project, I find that the logical nexus with the relevant program is too diffuse to provide a basis for standing and thus for subject-matter jurisdiction. *Cf. Harris Methodist*, 970 F.2d at 99; *Simpson*, 629 F.2d at 1235. If Plaintiffs are the intended beneficiaries of the Westside Bypass project, so too are potential casino patrons from outside New Jersey as well as every taxpayer in New Jersey.

Plaintiffs bear the burden of establishing their jurisdictional standing to sue. *See supra* Part II.D. Apparently content to rest on the arguments which I have rejected, Plaintiffs have not requested additional discovery, nor have they sought leave to amend their complaint in the event that I find they have no standing. Therefore, Plaintiffs' claim under Title VI will be dismissed with prejudice.

## G. The Coastal Area Facility Review Act

In Count II of the Amended Complaint, Plaintiffs seek relief under New Jersey's

Coastal Facility Review Act ("CAFRA"), *N.J.S.A.* 13:19–1 *et seq.* The supplemental jurisdiction statute provides in relevant part that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim ... if ... (3) the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). "Supplemental jurisdiction is a doctrine of discretion, not of right." *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,* 963 F.Supp. 395, 408 (D.N.J.1997) (citing *Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 788 (3d Cir.1995)). In this case, in deference to principles of federalism and to New Jersey's interest in determining complex issues of state law, I will not exercise supplemental jurisdiction over Plaintiffs' state law claim. *See Trump,* 963 F.Supp. at 408. Therefore, Plaintiffs' claims under the Coastal Area Facility Review Act will be dismissed without prejudice.

## III. CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss the Amended Complaint will be granted. Plaintiffs' Title VI claim will be dismissed with prejudice, and Plaintiffs' CAFRA claim will be dismissed without prejudice. The Court will enter an appropriate Order.