**Robert M. WILSON, Appellant,**

v.

**Charles FENTON, Warden, U.S.N.E.P., and The State of Maryland, Appellees.**

**No. 81–1689.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) June 3, 1982.

Decided July 22, 1982.

---

Robert M. Wilson, pro se.

Stephen H. Sachs, Atty. Gen. of Md., Diane G. Goldsmith, Asst. Atty. Gen., State of Md., Baltimore, Md., for the State of Md.

Harry A. Nagle, Asst. U. S. Atty., Lewisburg, Pa., for appellees.

Carlon M. O'Malley, Jr., U. S. Atty., Joseph F. Cimini, Sp. Asst. to the U. S. Atty., Scranton, Pa., for the Warden, U.S.N.E.P.

## OPINION OF THE COURT

Before ADAMS, VAN DUSEN and WEIS, Circuit Judges.

PER CURIAM.

Robert M. Wilson appeals from a judgment of the United States District Court for the Middle District of Pennsylvania denying his motion to open, in light of *Cuyler v. Adams*, 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981), a judgment that denied his petition for a writ of habeas corpus. Because we find no abuse of discretion in the district court's denial of the motion to open the judgment, we affirm.

## I.

On May 26, 1971, police observed Wilson burglarizing a Carroll County, Maryland, residence. Wilson fired a gun at the officers, and subsequently was arrested. The next day Wilson was charged with assault with intent to murder. On June 6, 1971, Wilson posted a $20,000 bond and was released. Two months later, Wilson was arrested in Massachusetts on a charge of accessory after the fact to manslaughter. In January 1972, Wilson was found guilty of the Massachusetts charge and sentenced to six-and-one-half to seven years in the Massachusetts Correctional Institution.

Six indictments charging Wilson with the crimes committed in Maryland were filed in the Circuit Court of Carroll County on January 24, 1972. Wilson was brought to Maryland pursuant to a federal writ of *habeas corpus ad prosequendum* on July 13, 1972 and was arraigned the next day in the United States District Court for the District of Maryland on an indictment charging interstate transportation of stolen jewelry. On that same day, pursuant to a *state* writ of *habeas corpus ad prosequendum*, Wilson appeared before the Circuit Court for Carroll County to be arraigned on the state charges. On August 6, 1972, Wilson was returned to Massachusetts.

A Carroll County detainer was sent to the Massachusetts Correctional Institution on August 24, 1972. The United States District Court for the District of Massachusetts subsequently granted Wilson's request for a restraining order and directed that Wilson not be released from the Massachusetts Correctional Institution to the State of Maryland or to the United States Marshal. Six months later, Wilson was indicted in Massachusetts for conspiracy to commit murder. On April 28, 1975, after two trials on that charge had ended in mistrials, the restraining order was dissolved. The Carroll County indictments were dismissed by the Maryland Circuit Court on October 30, 1975, on the ground that Wilson had been denied a speedy trial. However, on March 8, 1977, the Maryland Court of Special Appeals reversed the order of the Circuit Court and remanded the case for trial. *State v. Wilson*, 35 Md.App. 111, 371 A.2d 140 (1977), *aff'd*, 281 Md. 640, 382 A.2d 1053, *cert. denied*, 439 U.S. 839, 99 S.Ct. 126, 5 L.Ed.2d 136 (1978).

On May 25, 1978, Wilson, then a prisoner at the United States Penitentiary in Lewisburg, Pennsylvania, pursuant to a conviction in Florida on other federal charges, petitioned the District Court for the Middle District of Pennsylvania for a writ of habeas corpus. The petition alleged, *inter alia*, that the State of Maryland had violated the Interstate Agreement on Detainers and consequently that the Carroll County indictments should be dismissed. By a judgment entered January 26, 1979, the district court dismissed on the merits Wilson's petition for a writ of habeas corpus. Wilson filed no notice of appeal.

On July 10, 1979, Wilson filed a motion to open the judgment that had been entered by the Middle District in light of the recent decision of this Court in *Adams v. Cuyler*, 592 F.2d 720 (3d Cir. 1979). In view of the

Supreme Court's grant of certiorari in that case under the name of *Cuyler v. Adams*, the district court dismissed the motion to open without prejudice to refiling the motion within sixty days of the Supreme Court's final disposition of *Cuyler v. Adams*. The Supreme Court decided *Cuyler v. Adams* on January 20, 1981, 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981). Wilson then filed another motion to open, arguing, *inter alia*, that the earlier dismissal of his petition for a writ of habeas corpus by the district court was rendered nugatory by the decision of the Supreme Court in *Cuyler v. Adams*. In a memorandum order entered March 25, 1981, the district court, holding *Cuyler v. Adams* to be inapposite to Wilson's claim, denied Wilson's renewed motion to open. A timely appeal followed.

## II.

The scope of review of this matter is narrow. Wilson's motion to open can only be construed as a Rule 60(b)(5) or (6) motion.[1] Although orders denying relief under that rule are appealable, *Browder v. Director of Corrections*, 434 U.S. 257, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978), the filing of a 60(b) motion does not permit the review of the underlying judgment. *Browder, id.* at 263 n.7, 98 S.Ct. at 560 n.7. The district court's dismissal of Wilson's petition for a writ of habeas corpus is thus not directly at issue. Instead, we are confined to a determination whether the district court abused its discretion in denying the motion to open in light of *Cuyler v. Adams*.

In *Klapprott v. United States*, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266 (1949), the Supreme Court held that Rule 60(b)(6) permits a district court to vacate a judgment whenever such action is appropriate to accomplish justice. Later, the Supreme Court stressed that a district court should do so only in extraordinary circumstances. *Ackermann v. United States*, 340 U.S. 193, 71

S.Ct. 209, 95 L.Ed. 207 (1950). As Judge Gibbons noted in *Mayberry v. Maroney*, 529 F.2d 332 (3d Cir. 1976), "This Circuit has consistently held that in order to grant a motion under Rule 60(b)(6) the movant must allege and prove such extraordinary circumstances as will be sufficient to overcome our overriding interest in the finality of judgments." *Id.* at 337 (Gibbons, J., concurring). *See also Delaware Valley Citizens' Council for Clean Air v. Commonwealth of Pennsylvania*, 674 F.2d 976, 981 (3d Cir. 1982).

A decision of the Supreme Court of the United States or a Court of Appeals may provide the extraordinary circumstances for granting a Rule 60(b)(6) motion, but *Cuyler v. Adams, supra*, does not provide the justification in this case because it is inapplicable to Wilson's factual situation.

## III.

In *Cuyler v. Adams*, the Supreme Court held "as a matter of federal law that prisoners transferred pursuant to the provisions of [Article IV of the Interstate Agreement on Detainers] are not required to forfeit any pre-existing rights they may have under state or federal law to challenge their transfer to the receiving State." 449 U.S. at 450, 101 S.Ct. at 712. In *Cuyler v. Adams*, the prisoner's pre-existing right to a pre-transfer hearing under Section 10 of the Uniform Criminal Extradition Act (codified in Pennsylvania at 42 Pa.Cons.Stat. Ann. § 9131 (Supp.1980)) arguably was violated, and the Supreme Court concluded that the prisoner stated a claim for relief under 42 U.S.C. § 1983 for the asserted violation.

Here, the district court did not abuse its discretion in holding that *Cuyler v. Adams* does not affect Wilson's claims. *Cuyler v. Adams* by its terms applies to those cases in which a transfer occurs pursuant to

---

1. Rule 60(b), Federal Rules of Civil Procedure reads in pertinent part:

    (b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

    * * * * * *

    (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment....

the Interstate Agreement on Detainers. Wilson, however, was not transferred pursuant to the Detainer Agreement. Instead, he was transferred pursuant to writs of *habeas corpus ad prosequendum*, which, as *United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978), teaches, do not trigger the Detainer Agreement. With the absence of the Detainer Agreement as a predicate, *Cuyler v. Adams* cannot apply to Wilson's case. Moreover, the United States is not a party to the Uniform Criminal Extradition Act, so that whatever protections are accorded under that Act could not be applied to Wilson, a federal prisoner.[2]

In light of the inapplicability of *Cuyler v. Adams* to the facts of this case, the district court did not abuse its discretion in denying Wilson's Rule 60(b) motion. The order of the district court entered March 25, 1981 accordingly will be affirmed.

---

**2.** Even if *Cuyler v. Adams* were to apply, Wilson would not receive any comfort. The alleged excesses about which Wilson complains would not be remedied by an extradition hearing. Such hearings are limited to determining whether the extradition documents are in order, whether the petitioner has been charged with a crime in the demanding state, whether the petitioner is the person named in the request for extradition, and whether the person is a fugitive. *Michigan v. Doran*, 439 U.S. 282, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978). Wilson's attack on speedy trial grounds, for example, could not be asserted in such a hearing.