**AMERICAN SAMOA GOVERNMENT, Plaintiff**

v.

**ATUALEVAO MEREDITH, TOAONO KELEMETE, and JOHN DOES 1-10, Defendants**

High Court of American Samoa
Land and Titles Division

LT No. 19-94

92

June 27, 1995

Before RICHMOND, Associate Justice, BETHAM, Associate Judge, and ATIULAGI, Associate Judge.

Counsel: For Plaintiff, Henry W. Kappel, Assistant Attorney General
For Defendants, Solomona Toailoa and Albert Mailo

Order Denying Motion for Reconsideration, New Trial, or Relief from Judgment:

## BACKGROUND

This action was brought by plaintiff American Samoa Government ("ASG") to evict defendants from a 72.72 acre plot of land ("the property") located within the original boundaries of the Pago Pago International Airport in Tafuna.

ASG plans to construct a stadium in time for the 1997 South Pacific Mini Games on a 16-acre, more or less, portion of the property, north of the public road between the airport terminal and Ili`ili. Defendants have cultivated and made other use of the 16-acre portion, apparently at least since ASG's lease of this portion to the Federal Aviation Administration ("FAA") was terminated in 1984, and claim, among other issues raised, that title to the property, or at least the 16-acre portion, was always vested

93

in the Atualevao family as communal land or should revert to this family.

Originally, this court, in *Fonoti Lalau v. G.A.S.*, LT 16-1957, slip op. (Apr. 11, 1958), determined that the Lemeana`i family owned this property. In a condemnation proceeding, *In the matter of the Acquisition of Land for the Construction of Airport at Tafuna,* LT 15-1959, slip op. (Dec. 28, 1959), ASG obtained fee simple title to approximately 550.83 acres, which included this property. This decision, which had the legal effect of transferring title to ASG, was affirmed by the Appellate Division of the High Court on May 31, 1960. On July 21, 1960, ASG paid the former title holder of the Lemeana`i family $18,856.61 as compensation.

In a failed attempt by defendant Atualevao Meredith to reclaim the 16-acre portion of the property, this court, in *Meredith v. American Samoa Gov't*, 2 A.S.R.2d 66, 68 (Land & Titles Div. 1985), *aff'd* AP 23-85, slip op. (1986), confirmed that once ASG condemned the land for a public purpose, it gained title in fee simple.

## PROCEDURAL HISTORY

On May 25, 1994, ASG filed a complaint for trespass and injunctive relief with this court naming Meredith, Toaono Kelemete ("Kelemete"), and John Does 1-10 as defendants. That same day, ASG, in addition to the complaint, applied for a temporary restraining order, which was not issued, and preliminary injunction. On June 15, 1994, Kelemete filed a *pro se* answer and counterclaim. On June 22, 1994, at the hearing on the order to show cause, the court issued a stipulated temporary restraining order and associated orders.

The temporary restraining order prevented defendants from any new construction or farming where the stadium was to be built and allowed ASG to peaceably proceed with the stadium plans. On June 30, 1994, pursuant to one of those orders, Meredith and Kelemete filed a second answer by counsel. On July 7, 1994, at a further hearing on the order to show cause, a stipulated preliminary injunction, retaining the status quo, replaced the temporary restraining order.

On January 27, 1995, ASG filed a reply to Kelemete's counterclaim and moved for summary judgment. On January 18, 1995, we issued an order granting ASG's motion for summary judgment. On May 4, 1995, defendants filed a motion for reconsideration or new trial with respect to the summary judgment, and apparently for relief from the 1959 condemnation judgment. On June 13, 1995, the motion came regularly for

hearing.  Both parties were represented by counsel.

## DISCUSSION

### I.  Reversionary Right Under Constitution

In granting summary judgment, we held that the original  Constitution of American Samoa did not contain a reversion provision.  *See* REV. CONST. AM. SAMOA  art. I, § 2 (1960).  Defendants still contend that the original Constitution contained such a provision whereby condemned land would revert to a prior owner if ASG failed to use the land within three years after condemnation.  Defendants base their belief that such a provision existed on a footnote to article I, section 2, of the Revised Constitution of American Samoa, which states:

> Section [article I, section 2] formerly provided for payment "before" the taking of property and for reversion to owner after 3 years of non-user.  H.C.R. No. 45, 10th Leg. 1st Spec. Sess., requested Secty. of Int. to revise the section to its present form. This was done at the time of ratification and approval on June 2, 1967.

This footnote mentions the existence of a reversion provision in the proposed Revised Constitution.  If defendants would have researched the footnote further, they would have discovered that the reversion provision never became effective.  The proposed Revised Constitution, which was approved by the Constitutional Convention, convened on September 26, 1966, and by a majority of the voters at the general election in 1966, included the reversion provision.  However, before it was signed by the Secretary of the Interior, the Tenth Legislature of American Samoa passed H.C.R. No. 45,[1] requesting the Secretary of the Interior to delete the reversion provision.  On July 1, 1967, the Secretary of the Interior signed the Revised Constitution, subject to the deletion of the reversion provision in article I, section 2.[2]  Thus, the reversion provision never took legal

---

[1]  The Tenth Legislature of American Samoa, in passing H.C.R. No. 45 on May 22, 1967, proposed to amend article I, section 2 of the Revised Constitution by deleting the reversion provision which is "unduly restrictive of eminent domain procedures in American Samoa and which will make condemnation of land for public purposes virtually unworkable."

[2]  The following language is inserted above the Secretary of the Interior's signature on the Revised Constitution of American Samoa: "Subject to the deletion from Article I, section 2 of all after the title and the insertion in lieu thereof of the text of Article I, section 2 of the Constitution of American Samoa effective October 17, 1960, to wit: 'No person shall be

95

effect.

## II. Reversionary Right Under Statute

Defendants also claim a reversionary right under A.S.C.A. § 37.2001(b), which amended § 37.2001. It states in relevant part: "[i]f the subject land is not used for the stated public purpose within five years after condemnation it must be returned to the prior owner with all improvements." Prior to the effective date of this amendment in 1989, the laws of American Samoa, in the 1949 Code of Laws of the Government of American Samoa and all following codes, did not contain a provision that required ASG to use condemned land within a specific term of years.

In granting summary judgment, we held that this statute had no retrospective effect and did not apply to LT 15-1959. Defendants concede that A.S.C.A. § 37.2001(b) has no retrospective effect, but now seem to argue that it prospectively applies to ASG's failure to use the condemned land from 1988 to 1994. We disagree. Defendants' understanding of A.S.C.A. § 37.2001(b) is legally and factually incorrect.

First, the plain language of A.S.C.A. § 37.2001(b) restricts it from applying to a condemnation proceeding that occurred before its passage into law. It states that ASG must specify the public purpose in the *"proposed condemnation"* and use the land "within five years *after condemnation"* (emphasis added). The condemnation proceeding at issue in this matter was completed about 30 years prior to the enactment of A.S.C.A. § 37.2001(b). For the statute to apply in this case, it would have to state that "ASG must use condemned land within five years of the passage of the statute." This is not the case.

Second, defendants' belief that A.S.C.A. § 37.2001(b) became effective in 1988 is factually incorrect. The legislative history of A.S.C.A. § 37.2001(b) clearly shows that its second enactment, as is constitutionally required, REV. CONST. AM. SAMOA, art. I, § 3 and art. II § 9, by Pub. L. 21-24, was approved by the Governor of American Samoa on October 24, 1989, and became effective on November 19, 1989. Since ASG began clearing the condemned land for construction of the stadium in January 1994, less than five years from the date A.S.C.A. § 37.2001(b) became effective, the statute would not be applicable even if it had prospective effect.

---

deprived of life, liberty, or property, without due process of law, nor shall private property be taken for public use without just compensation.'"

### III. Public Purpose

■ Defendants claim that the property should revert to them since ASG's plan to construct a stadium on the property is inconsistent with the stated public purpose for which the property was condemned. We disagree. ASG has the authority to alter or modify the public purpose in order to satisfy some other public use, as required by ASG's needs. *Meredith*, 2 A.S.R.2d at 67 (court held that use of the property for rock crushing operations did not revert title back to the original owners); *Arechiga v. Housing Authority*, 324 P.2d 976 (Cal. 1958) (court upheld the right to sell condemned land to another); *Seattle Land & Improvement Co. v. City of Seattle*, 79 P. 780, 781 (Wash. 1905) (court held that the city of Seattle had the authority to modify the public use of land it condemned, unless the property was donated by a private party for a specific restrictive use).

ASG has used the property for the original stated public purpose, and for both related[3] and unrelated purposes, for a number of years, and may use the property for another public purpose it now deems necessary.

### IV. Unjust Compensation Claim

■ Defendants claim that the $18,857.61 the Lemeana`i family received from ASG as compensation for the property was unjust. In granting summary judgment, we held that this argument was untimely since defendants' appeal rights regarding the issue of just compensation were exhausted and forever barred by res judicata. "The sum and substance of the whole doctrine [of res judicata] is that a matter once judicially decided is finally decided." *Massie v. Paul*, 92 S.W.2d 11, 14 (Ky. 1936).

Throughout these proceedings, defendants have failed to understand why their appeal rights regarding the issue of just compensation are barred by res judicata. In granting summary judgment, we pointed out the fact that defendants did not raise the issue of just compensation in *Meredith*. In turn, defendants misinterpreted this statement to mean that they must retain such a right of appeal. This is incorrect. During the condemnation proceeding, LT 15-1959, slip op. (Dec. 28, 1959), the parties were allowed to submit evidence on the actual location and monetary value of the Lemeana`i family land. Upon review of this evidence, the court awarded the Lemeana`i family $18,856.61 in compensation, which the

---

[3] The lease of the said property by ASG to the FAA in 1963 was found by this court to be consistent with the stated purpose for which the land was originally condemned. *Meredith*, 2 A.S.R.2d at 67.

former titleholder received shortly after the decision was affirmed. This decision was affirmed by the Appellate Division of the High Court on May 31, 1960. From this date forward, defendants' appeal rights regarding the issue of just compensation were barred by res judicata.

Even if defendants had raised the issue of just compensation in *Meredith*, it would have been barred by res judicata. *Meredith* involved separate and distinct issues arising out of events occurring after LT 15-1959 was decided, which were therefore appropriate for the court to determine. However, the issue of just compensation was directly related to the essential issue originally decided by the court in LT 15-1959. Therefore, it was barred by res judicata at the time *Meredith* was decided.

Defendants further argue that even if their appeal rights regarding the issue of just compensation are exhausted, the court should ignore its previous judgments and award them more compensation.[4] Defendants reason that ASG should follow the example of democratic governments that have recently atoned for past errors by returning land taken without just compensation to its native peoples. This argument is legally unfounded in this case. There is no rational legal basis for defendants to analogize LT 15-1959, which provided fair proceedings and payment of just compensation, to illegal takings by other governments who failed to ensure due process protection. ASG legally gained title to the property and intends to continue to use it for public benefit. No reason is given to ignore previous court judgments in order to award more compensation to defendants.

## V. Promises to Return the Property

Defendants assert that at various times, the recent Governors of American Samoa have made promises to convey or lease the 16-acre portion of the property, or part of it, to defendants. They claim that after the final *Meredith* decision in 1986, Governor A.P. Lutali promised on several occasions, while in office, to return to them at least part of the 16-acre portion. They further declare that Governor Lutali made the same promises to them during the gubernatorial election campaigns in 1988 and again in 1992. They also state that during his 1989-1993 administration, Governor Peter T. Coleman committed ASG to leasing to them part of the property. They also contend that in January 1994, after ASG began to clear part of the 16-acre portion for the proposed stadium, Governor Lutali

---

[4] Defendants have apparently requested this court, pursuant to T.C.R.C.P. 60(b)(6), for relief from final judgment in LT 15-1959. We address this issue *supra*, 28 A.S.R. at 100.

assured defendants that they would receive a "perpetual lease" of another part of the 16-acre portion. Finally, defendants allege that in February 1994, the Secretary of Samoan Affairs affirmed Governor Lutali's intentions, and they agreed with the area for the lease, which the Secretary identified to them on a map. In granting summary judgment, we held that the Governors' verbal promises for the "sale of real property or any interest therein" were not legally binding in American Samoa under the statute of frauds found in A.S.C.A. § 37.0221(a). Defendants contend that this statute is inapplicable since the Governors' verbal promises to return the 16-acre portion, or a part of it, were not equivalent to a "sale." For purposes of this action at least, we agree.

We also concluded that the Governors' verbal promises to lease the 16-acre portion, or part of it, were unenforceable since they did not comply with the requirements of a valid lease pursuant to A.S.C.A. § 37.0221(a). Defendants correctly point out that this statute is inapplicable since it regulates communal land, not public land. Nonetheless, we still conclude that the Governors' verbal promises to convey or lease a portion of the property are unenforceable for other reasons.

A. Campaign Verbal Promises

■ Governor Lutali's campaign promise in 1988 was made when he was not acting on ASG's behalf but merely as a private citizen seeking elected office. Such a promise is unenforceable, especially against the government. Imagine how much money it would cost the Internal Revenue Service if George Bush's verbal campaign promise, "Read my lips--no new taxes," was enforceable by United States taxpayers.

B. Verbal Promises Made While in Office

■ The verbal promises to convey or lease made by the Governors while in office were not based on valid consideration and are unenforceable. It is a well established legal principle that "a promise made without supporting consideration is unenforceable." *Powers Restaurants, Inc. v. Garrison*, 465 P.2d 761, 763 (Okl. 1970). Without valid consideration, these verbal promises are at most offers to make a gift and "[a] mere promise to make a gift is not enforceable." *Oman v. Yates*, 422 P.2d 489, 494 (Wash. 1967). The mere expression of an intention or desire is not an enforceable promise, unless there is an undertaking to carry the intention into effect. *E.I. DuPont De Nemours & Co. v. Clairborne-Reno Co.*, 64 F.2d 224, 233 (8th Cir. 1933).

Governor Lutali and Governor Coleman never carried out any of the alleged verbal promises to return the 16-acre portion, or any part of it, to defendants. Defendants even admit that discussions regarding return of any portion of the property never reached the stage of genuine mutual understanding.

Accordingly, we hold that the Governors' verbal promises while in office to return, by either conveyance or lease, the 16-acre portion of the property, or any part of that portion, to defendants are merely offers to make a gift and not enforceable.

## VI.    Relief From Judgment

Defendants further request the court to grant relief from the 98, 101, 102judgment in the 1959 condemnation proceeding. Although not stated by defendants in their motion, this request is apparently made pursuant to T.C.R.C.P. 60(b). Since defendants have filed this motion more than one year after the 1959 condemnation judgment, clause (6) is the only subsection of Rule 60(b) that could apply.

T.C.R.C.P. 60(b), which mirrors F.R.C.P. 60(b), permits the court "to relieve a party from a final judgment" for "(6) any other reason justifying relief from the operation of the judgment." The court, in its discretion, may grant the motion, provided that it is not premised on one of the grounds enumerated in clauses (b)(1) through (b)(5), *Nouata of Nu`uuli v. Pasene of Nu`uuli*, 1 A.S.R.2d 25, 34 (App. Div. 1980) (*citing United States v. Cirami*, 535 F.2d 736, 738 (2nd Cir. 1977)), and that it is filed "within a reasonable time." *U.S. v. Demjanjuk*, 103 F.R.D. 1, 3 (E.D. Ohio 1983).

■ Despite its broad language, granting relief under Rule 60(b)(6) is generally only available upon a showing of "extraordinary circumstances." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 864 (1988) (*quoting Ackermann v. United States*, 340 U.S. 193, 202 (1950)). Defendants must "allege and prove such extraordinary circumstances as will be sufficient to overcome the overriding interest in the finality of judgments," *Wilson v. Fenton*, 684 F.2d 249, 251 (3d Cir. 1982) (*quoting Mayberry v. Maroney*, 529 F.2d 332, 337 (3d Cir. 1976)), especially where the reopening of a judgment could unfairly prejudice the opposing party. *Fackelman v. Bell*, 564 F.2d 734, 736 (5th Cir. 1977).

Defendants have failed to establish any extraordinary circumstances which create any questions of fact that would require granting of relief under

Rule 60(b)(6). Defendants have failed to bring this motion in a reasonable time period. In *Nouata of Nu`uuli*, 1 A.S.R.2d at 34, this court held that the time period is not open ended and that a 47 year delay was unreasonable. Relief after the passage of 35 years in this case is likewise unreasonable. Finally, granting relief would unduly prejudice ASG, as holders of legal title to the property, and would contravene the principle of reaching finality of judgments in the administration of justice. "There must be an end to litigation someday . . . ." *Id.* at 35 (*citing Ackerman v. United States*, 340 U.S. at 202).

We exercise our discretion under Rule 60(b)(6) and will deny defendants relief from final judgment in LT 15-1959.

## ORDER

We deny defendants' motion for reconsideration, new trial, or relief from judgment and affirm our order granting plaintiff's motion for summary judgment.

It is so ordered.