Lillian E. BRYANT, Lillian W. Bryant, Carl Briscoe, Gustavia Ellis, Pierre Hollingsworth, Michael F. Johnson, Elwood S. Davis, First Ward Civic Association, Third Ward Civic Association and West Side Protective Homeowners Association, Plaintiffs,

v.

The NEW JERSEY DEPARTMENT OF TRANSPORTATION, the State of New Jersey, the South Jersey Transportation Authority, Mirage Resorts Incorporated, the New Jersey Transportation Trust Fund Authority and the Casino Reinvestment Development Authority, Defendants.

No. CIV. A. 97–1397.

United States District Court, D. New Jersey.

March 18, 1998.

Stanley C. Van Ness, Karen L. Cayci, Herbert, Van Ness, Cayci & Goodell, Princeton, NJ, for Plaintiffs, Lillian E. Bryant, Lillian W. Bryant, Carl Briscoe, Gustavia Ellis, Pierre Hollingsworth, Michael F. Johnson, Elwood S. Davis, First Ward Civic Association, Third Ward Civic Association and West Side Protective Homeowners Association.

Edward N. Fitzpatrick, Benjamin Clarke, William J. Bailey, DeCotiis, Fitzpatrick & Gluck, Teaneck, NJ, for Defendant, Mirage Resorts, Inc.

Peter Verniero, Attorney General of New Jersey, Jeffrey J. Miller, Jerry Fischer, Assistant Attorneys General, Josh Lichtblau, Kevin Marc Schatz, Robert Marshall, Deputy Attorneys General, Trenton, NJ, for Defendants, the State of New Jersey, New Jersey Department of Transportation and New Jersey Transportation Trust Fund Authority.

Thomas Edward Monahan, Jean L. Cipriani, Gilmore & Monahan, P.A., Toms River, NJ, for Defendant, South Jersey Transportation Authority.

Theodore W. Geiser, Patrick J. McAuley, Liza M. Walsh, Mark D. Haefner, Connell, Foley & Geiser, LLP, Roseland, NJ, for Defendant, Casino Reinvestment Development Authority.

Renee Steinhagen, Public Interest Law Center of New Jersey, An Appleseed Affiliate, Newark, NJ, for Amicus Curiae.

OPINION

ORLOFSKY, District Judge.

On February 17, 1998, I determined that the plaintiffs in this action lacked standing to sue under Title VI of the Civil Rights Act of 1964, and I therefore dismissed the Amended Complaint for lack of jurisdiction. *See Bryant v. New Jersey Department of Transportation ("Bryant I")*, 987 F.Supp. 343, (D.N.J.1998). Specifically, I found that the plaintiffs' claims did not fall within the "zone of interests" protected by Title VI as that zone had been defined by the seminal case of *Simpson v. Reynolds Metals Co., Inc.*, 629 F.2d 1226 (7th Cir.1980). On February 25, 1998, eight days after my decision, the United States Supreme Court revisited the zone of interests test in *National Credit Union Administration v. First National Bank & Trust Co.*, —— U.S. ——, 118 S.Ct. 927, 140 L.Ed.2d 1, (1998). On February 26, 1998, in a telephone conference with all counsel, I requested supplemental briefs from the parties regarding the impact, if any, of *National Credit Union* on my decision in *Bryant I*.

I must decide the question, in its infancy, of whether the *National Credit Union* decision has altered the standing requirements of Title VI. Treating my request as a *sua sponte* motion for reconsideration, I conclude that the Supreme Court's decision in *National Credit Union* has undermined the doctrine articulated in *Simpson* to such an extent that it no longer controls this case. In light of this intervening change in controlling law, I must reverse my decision in *Bryant I*. For the reasons set forth below, my order dismissing the Amended Complaint, dated February 17, 1998, will be vacated as to the Title VI claim.

## I. BACKGROUND

While reconsidering these motions to dismiss for lack of jurisdiction, I must again assume the truth of the facts alleged in the Amended Complaint. *See Suber v. Chrysler Corp.*, 104 F.3d 578, 581 (3d Cir.1997) (citing *Licata v. U.S. Postal Service*, 33 F.3d 259, 260 (3d Cir.1994)). These facts are set forth in detail in my prior opinion, *see Bryant I*,

987 F.Supp. 343, and will be revisited only briefly here.

The New Jersey Department of Transportation, the New Jersey Transportation Trust Fund Authority, the South Jersey Transportation Authority, the Casino Reinvestment Development Authority ("CRDA") and Mirage Resorts, Inc. (collectively "Defendants"), have agreed to cooperate in the financing and construction of a casino and entertainment complex on a particular site in Atlantic City, New Jersey. *See* Amended Complaint at ¶¶ 1, 15–21. To facilitate access to the new complex, Defendants have proposed to construct a highway extension and tunnel (the "Westside Bypass") connecting an existing roadway to the site of the complex. *See id.* at ¶ 22. Plaintiffs allege that the construction of the Westside Bypass is "an activity for which federal financial assistance is being received under [sic] the meaning of 42 U.S.C. § 2000d." *Id.* at ¶ 44.

The plaintiffs in this action, Lillian E. Bryant, Lillian W. Bryant, Carl Briscoe, Gustavia Ellis, Pierre Hollingsworth, Michael F. Johnson, Elwood S. Davis, the First Ward Civic Association, the Third Ward Civic Association and the West Side Protective Homeowners Association (collectively "Plaintiffs"), are residents and neighborhood groups of the Atlantic City communities known as the West Side and Venice Park. *Id.* at ¶¶ 5, 30. Referring to those communities, Plaintiffs claim that the negative effects of the Westside Bypass project will fall disproportionately on the "last stable, middle-class African–American neighborhoods" in Atlantic City. *See id.* at ¶ 2. In addition to "air quality, traffic, water quality, wetlands and community character impacts," the construction of the Westside Bypass would require "the acquisition and destruction of at least nine homes in the Venice Park community." *Id.*

After filing Answers, Defendants moved, *inter alia*, to dismiss the Title VI claim based on Plaintiffs' lack of standing. Defendants argued that, pursuant to the Title VI standing test articulated in *Simpson v. Reynolds Metals Co., Inc.*, 629 F.2d 1226 (7th Cir. 1980), (the "*Simpson* Doctrine"), Plaintiffs lacked standing because they were not intended beneficiaries of, applicants for, or par-

ticipants in the Westside Bypass project. This proposition was disputed by Plaintiffs and by *amicus curiae*, the Public Interest Law Center of New Jersey ("PILC").

In a cursory response to Defendants' motions to dismiss, Plaintiffs argued that the *Simpson* Doctrine had been abrogated by the passage of the Civil Rights Restoration Act of 1986 ("CRRA"), 42 U.S.C. § 2000d–4a. *See* Plaintiffs' Brief at 21–22. PILC amplified this argument with a more substantial analysis. *See* PILC's Brief at 27–33. Plaintiffs also stated, in what I presume to be an alternative argument, that they had standing under the *Simpson* Doctrine because the intended beneficiaries of the Westside Bypass project must include "all citizens of the State of New Jersey and more particularly citizens of Atlantic City." *Id.* at 21. PILC similarly contended that Plaintiffs were the intended beneficiaries of the Westside Bypass project "as citizens of Atlantic City." *See* PILC's Brief at 33.

Faced with only these arguments, I determined in *Bryant I* that the CRRA did not abrogate the *Simpson* Doctrine. *See Bryant I*, 987 F.Supp. 343, 350. I also found that Plaintiffs were not intended beneficiaries of, applicants for, or participants in the Westside Bypass project because, "[t]o the extent that potential casino patrons, residents of Atlantic City or residents of New Jersey would benefit from this project ... the logical nexus with the relevant program is too difuse to provide a basis for standing and thus for subject matter jurisdiction." *See Bryant I*, 987 F.Supp. at 352. Therefore, I dismissed Plaintiffs' Title VI claim for lack of standing and declined to exercise supplemental jurisdiction over Plaintiffs' state law claim. *See id.*

On February 25, 1998, however, the Supreme Court decided the case of *National Credit Union Administration v. First National Bank & Trust Co.*, —— U.S. ——, 118 S.Ct. 927, 140 L.Ed.2d 1 (1998). On February 26, 1998, in a telephone conference call with all counsel, I asked the parties to submit supplemental briefs discussing the impact, if any, of the *National Credit Union* decision on Plaintiffs' standing in this case. On March 12, 1998, in order to eliminate any prejudice to Plaintiffs during my reconsideration of *Bryant I*, and with the consent of all parties, I entered an order pursuant to Rule 4(a)(5) of the Federal Rules of Appellate Procedure extending Plaintiffs' time for filing a Notice of Appeal from the order of dismissal for 30 days.

## II. DISCUSSION

In the wake of *National Credit Union*, I must discern the nature of my authority to reconsider the order of dismissal, I must evaluate the implications of *National Credit Union*, and I must determine whether, at the end of the day, Plaintiffs have standing to maintain this action under Title VI. I conclude that Rule 59(e) of the Federal Rules of Civil Procedure authorizes me to reconsider my decision in *Bryant I*, that, in light of *National Credit Union*, the *Simpson* Doctrine no longer controls this case, and that Plaintiffs do have standing to assert a claim under Title VI. Accordingly, the order of dismissal will be vacated as to the Title VI claim.

### A. Justice, Process and Rule 59(e)

■ Defendants have expressed considerable doubt as to the existence of a procedural mechanism which would allow me to reconsider the judgment of dismissal entered on February 17, 1998. *See, e.g.,* CRDA's Supp. Brief at 3 n. 1. A district court may, however, vacate a judgment pursuant to Rule 59(e) on the basis of an intervening change in controlling law. *See North River Insurance Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir.1995); *see also Hulmes v. Honda Motor Co., Ltd.,* 960 F.Supp. 844, 850 (D.N.J. 1997), *aff'd mem.,* 141 F.3d 1154 (3d Cir. 1998).[1] Although such power is infrequently exercised by federal courts, there is no doubt of its existence and courts have not hesitated to vacate orders of dismissal based upon subsequent Supreme Court decisions. *See, e.g., Hill v. City of Chester,* 1994 WL 463405, *1 & n. 1 (E.D.Pa. Aug.26, 1994), *aff'd mem.,*

---

1. That Rule provides: "Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment." Fed.R.Civ.P. 59(e).

60 F.3d 815 (3d Cir.), *cert. denied*, 516 U.S. 914, 116 S.Ct. 302, 133 L.Ed.2d 207 (1995).

■ Nevertheless, CRDA contends that Rule 59 cannot provide the mechanism for reconsidering *Bryant I* because CRDA reads that rule to apply only to a judgment rendered after trial. *See* CRDA's Supp. Brief at 3 n. 1. Although most of Rule 59 does indeed pertain to new trials, the last paragraph expressly permits a district court to "alter or amend a judgment." *See* Fed.R.Civ.P. 59(e). The term "judgment" as used in the Federal Rules of Civil Procedure includes "a decree and any order from which an appeal lies." Fed.R.Civ.P. 54(a) (defining "Judgment"). Thus, Rule 59(e) permits a district court to reconsider an order of dismissal. *See Belair v. Lombardi,* 151 F.R.D. 698, 699 (M.D.Fla. 1993) ("A motion to alter or amend a judgment is permissible in cases, as the one now before the Court, which have been resolved through an order of dismissal."); *see also American Trial Lawyers Association, New Jersey Branch v. New Jersey Supreme Court,* 409 U.S. 467, 93 S.Ct. 627, 34 L.Ed.2d 651 (1973) (reversing denial of Rule 59(e) motion to amend judgment of dismissal); *Welch v. Folsom,* 925 F.2d 666 (3d Cir.1991) (finding that Rule 59(e) motion for reconsideration of order dismissing complaint was timely filed).[2]

■ A district court may invoke this power *sua sponte. See Hertz Corp. v. Alamo Rent–A–Car, Inc.,* 16 F.3d 1126, 1132 (11th Cir.1994); *Burnam v. Amoco Container Co.,* 738 F.2d 1230, 1232 (11th Cir.1984); *Sargent v. Columbia Forest Products, Inc.,* 1994 WL 902817, *2 (D.Vt. Sep.7, 1994), *aff'd mem.,* 52 F.3d 311 (2d Cir.), *cert. denied,* 516 U.S. 899, 116 S.Ct. 256, 133 L.Ed.2d 181 (1995); *Thomas v. Board of Examiners, Chicago Public Schools,* 1986 WL 5662, *1 (N.D.Ill. May 2, 1986); *see also Sun–Tek Industries, Inc. v. Kennedy Sky Lites, Inc.,* 929 F.2d 676, 678 (Fed.Cir.1991) (district court lacks authority to amend its judgment "in the absence of a motion or sua sponte action within the time limits set by Rule 59(e)"); *Charles v. Daley,* 799 F.2d 343, 348 (7th Cir.1986) ("A significant change in a judgment starts all time periods anew, whether the district court alters the judgment at the request of a party or on its own motion.").[3]

At this stage of these proceedings, the reconsideration of my order of dismissal on February 17, 1998, also conserves judicial resources and promotes justice. Even if I were to refrain from applying *National Credit Union* at this point, the Third Circuit would at least have discretion to consider the implications of that case on appeal, *see Salvation Army v. Department of Community Affairs of the State of New Jersey,* 919 F.2d 183, 197 (3d Cir.1990), if it is not compelled to consider it, *see Smith v. Holtz,* 87 F.3d 108, 111 n. 3 (3d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 611, 136 L.Ed.2d 536 (1996). "Surely no constructive purpose would appear to be served by this Court's staying with a demonstrably incorrect result, when an appeal from such a decision appears almost certain to compel its reversal based on new and controlling authority." *United*

---

2. CRDA further argues that this Court would lack authority to reconsider *Bryant I* under Fed. R.Civ.P. 60(b) and under Local Civ. R. 7.1(g). CRDA is again mistaken. "A decision of the Supreme Court of the United States ... may provide the extraordinary circumstances for granting a Rule 60(b)(6) motion." *Wilson v. Fenton,* 684 F.2d 249, 251 (3d Cir.1982); *see Smith v. Holtz,* 879 F.Supp. 435 (M.D.Pa.1995) (reversing grant of summary judgment pursuant to Fed.R.Civ.P. 60(b)(6) in light of intervening Supreme Court decision), *aff'd on other grounds,* 87 F.3d 108 (3d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 611, 136 L.Ed.2d 536 (1996); *see also Pittston Co. v. Sedgwick James of New York, Inc.,* 971 F.Supp. 915, 919 (D.N.J.1997) (vacating prior grant of summary judgment pursuant to Local Civ. R. 7.1(g) in light of intervening Third Circuit decision).

3. Moreover, had I not convened a telephone conference with counsel on February 26, 1998, to raise these issues *sua sponte,* Plaintiffs would have had until March 3, 1998, to move for reconsideration on their own. *See* Fed.R.Civ.P. 59(e); *Adams v. Trustees of the New Jersey Brewery Employees' Pension Trust Fund,* 29 F.3d 863 (3d Cir.1994) (incorporating Rule 6(a)'s time computation procedures into Rule 59(e)'s ten day time limit). By initiating this proceeding the day after the Supreme Court decided *National Credit Union,* however, I effectively preempted Plaintiffs. Thus, even absent authority to invoke Rule 59(e) on my own motion, fairness and equity would compel me to permit Plaintiffs to file an equivalent motion.

*States v. Ginsburg,* 705 F.Supp. 1310, 1326 n. 2 (N.D.Ill.1989), *aff'd on other grounds,* 909 F.2d 982 (7th Cir.1990); *see also Smith v. Holtz,* 879 F.Supp. 435, 439 (M.D.Pa.1995) (granting relief from judgment pursuant to Fed.R.Civ.P. 60(b)(6) in part to "avoid the needless delay and expense incurred by all concerned if the movant's sole remedy was appeal to a higher court"), *aff'd on other grounds,* 87 F.3d 108 (3d Cir.), *cert. denied,* — U.S. —, 117 S.Ct. 611, 136 L.Ed.2d 536 (1996). Moreover, absent a stay, Plaintiffs' homes could be condemned and destroyed by the time the Third Circuit heard their appeal. Thus, failing to act now would clearly "affect the substantial rights of the parties." *See* Fed.R.Civ.P. 61.

A motion for reconsideration under Rule 59(e) must come within 10 days of the judgment at issue. *See* Fed.R.Civ.P. 59(e); *accord* Local Civ. R. 7.1(g). In this case, I dismissed the Amended Complaint on February 17, 1998. *See Bryant I,* 987 F.Supp. 343. Thus, the time for reconsidering that decision would not expire until March 3, 1998. *See* Fed.R.Civ.P. 6(a); *Adams v. Trustees of the New Jersey Brewery Employees' Pension Trust Fund,* 29 F.3d 863 (3d Cir.1994). Therefore, because I raised this issue on February 26, 1998, the motion is timely.

■ Finally, CRDA intimates that I may not reverse my prior decision on the basis of an issue not previously presented to the Court. *See* CRDA's Supp. Brief at 3 n. 1.

The Third Circuit has held, however, that on a motion for reconsideration, "where 'a previously ignored legal theory takes on new importance due to an intervening development in the law, it is appropriate ... to exercise ... discretion to allow a party to revive that theory.'" *North River Insurance Co. v. CIGNA Reinsurance Co.,* 52 F.3d 1194, 1218 n. 39 (3d Cir.1995) (quoting *Salvation Army,* 919 F.2d at 196). I will, therefore, proceed to consider the import of the *National Credit Union* decision.

**B. The Death of a Doctrine**

■ In order to sue in federal court, Plaintiffs must satisfy not only the "case or controversy" standing requirements of Article III of the Constitution, but also the requirements of statutory standing. *See Bryant I,* 987 F.Supp. at 347.[4] Specifically, courts require "that a plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit." *Id.* at 349 (quoting *Bennett v. Spear,* 520 U.S. 154, —, 117 S.Ct. 1154, 1161, 137 L.Ed.2d 281 (1997)). The *Simpson* Doctrine dictates that Title VI's zone of interests includes the intended beneficiaries of, applicants for, and participants in federally funded programs. *See Bryant I,* 987 F.Supp. at 349.[5]

The holding, language and tenor of *National Credit Union,* however, compel me to

---

4. PILC devotes considerable and unsolicited attention to *Steel Co. v. Citizens for a Better Environment,* — U.S. —, 118 S.Ct. 1003, 140 L.Ed.2d 210, (1998). Even a cursory review of that decision, however, reveals that PILC has violently distorted Justice Scalia's eloquent discourse on the distinction between statutory standing and Article III standing. PILC argues that "the Court made clear that a party's right, or lack thereof, to seek relief under a statute is not an element of the court's subject matter jurisdiction, except in the rare event 'when the claim is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" PILC's Supp. Brief at 3 (quoting *Steel Co.,* 118 S.Ct. at 1007). PILC drew this quotation from its original context where it addressed the narrow and rarely invoked rule that some suits could be so utterly devoid of merit that they fail to amount to a case or controversy within the meaning of Article III.

Justice Scalia, at least, recognized the zone of interests test as "an issue of statutory standing ... [that] has nothing to do with whether there is a case or controversy under Article III." *Id.* at 1013. Thus, PILC's contention that "the question of whether the scope of Title VI creates a right to sue for a class of persons such as plaintiffs goes to the merits of plaintiffs' claim and is not jurisdictional," PILC's Supp. Brief at 3 n. 2, demonstrates a profound misreading of Justice Scalia's opinion, as well as fundamental constitutional doctrines.

5. In *Bryant I,* I characterized the *Simpson* Doctrine as requiring "a logical nexus between the federally funded 'program or activity' and the 'person' who is entitled to sue." *Bryant I,* 987 F.Supp. at 349. I am therefore puzzled by PILC's contention that "[t]he Court's opinion failed to acknowledge that these issues are intertwined...." PILC's Supp. Brief at 19.

re-examine the *Simpson* Doctrine. In *National Credit Union,* the National Credit Union Association had interpreted section 109 of the Federal Credit Union Act ("FCUA"), 12 U.S.C. § 1759, to permit credit unions to consist of multiple, unrelated employer groups each with its own common bond of occupation. Five commercial banks and the American Bankers Association filed suit under the Administrative Procedures Act, 5 U.S.C. § 702, to challenge the agency's interpretation of the FCUA. The Supreme Court held that, as competitors of the credit unions, the banks had standing to challenge the administrative action.

Writing for the majority of five, Justice Thomas delineated the zone of interests test:

> for a plaintiff's interests to be arguably within the "zone of interests" to be protected by a statute, *there does not have to be an indication of Congressional purpose to benefit the would-be plaintiff.* The proper inquiry is simply whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected ... by the statute. Hence, in applying the "zone of interests" test, *we do not ask whether, in enacting the statutory provision at issue, Congress specifically intended to benefit the plaintiff.*

*National Credit Union,* 118 S.Ct. 927, 935 (quotations and citations omitted) (emphasis altered).

I am unable to reconcile the *Simpson* Doctrine's emphasis on "intended" beneficiaries with this language; it is therefore clear to me that the Supreme Court's zone of interests test is inconsistent with the *Simpson* Doctrine's exclusive search for intended beneficiaries, applicants or participants. Moreover, the Supreme Court found that the interests of the commercial banks arguably fell within the zone of interests protected by the statute at issue "even if it cannot be said that Congress had the specific purpose of benefiting commercial banks." *Id.* at 935. The *Simpson* Doctrine, however, effectively confers standing only where Congress had such a purpose. *See Simpson,* 629 F.2d 1226; *Bryant I,* 987 F.Supp. at 349. Thus, I conclude that the law of standing, as articulated by the Supreme Court in *National Credit Union,* precludes application of the *Simpson* Doctrine in this case.

Defendants contend that *National Credit Union* did not change the law of standing, and that the result reached in *Bryant I* remains correct. In support of this argument, Defendants emphasize Justice Thomas' disagreement with Justice O'Connor's dissent. In response to Justice O'Connor's criticism that he had eviscerated the zone of interests test, *see National Credit Union,* 118 S.Ct. 927, 940–48 (O'Connor, J., dissenting), Justice Thomas wrote, in a footnote which I predict will engender considerable debate in the future, that the test he articulated "differs only as a matter of semantics" from the previously existing test. *See National Credit Union,* 118 S.Ct. 927, 936 n. 7. Thus, Defendants argue, *National Credit Union* has not changed the state of the law.

The Supreme Court, however, had never ratified the *Simpson* Doctrine and therefore, by reiterating the Court's old test, Justice Thomas did nothing to preserve that doctrine. *See Bryant I,* 987 F.Supp. at 349 n. 4 (citing *North Haven Board of Education v. Bell,* 456 U.S. 512, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982); *Consolidated Rail Corp. v. Darrone,* 465 U.S. 624, 104 S.Ct. 1248, 79 L.Ed.2d 568 (1984)). In fact, Justice Thomas implied that the zone of interests test had always been inconsistent with a test substantially similar to the *Simpson* Doctrine. In rejecting the argument that the banks lacked standing because there was no evidence that Congress was concerned with commercial banks when it passed the FCUA, Justice Thomas concluded:

> To accept that argument, we would have to *reformulate* the "zone of interests" test to require that Congress have specifically intended to benefit a particular class of plaintiff before a plaintiff from that class could have standing under the APA to sue. *We have refused to do this in our prior cases, and we refuse to do so today.*

*Id.* at 938 (emphases added). This is consistent with Supreme Court decisions which have rejected the *Simpson* Doctrine's cousins in the context of Title IX, *North Haven,* 456 U.S. 512, 102 S.Ct. 1912, 72 L.Ed.2d 299, and

in the context of Section 504 of the Rehabilitation Act of 1973, *Consolidated Rail,* 465 U.S. 624, 104 S.Ct. 1248, 79 L.Ed.2d 568. Thus, in *National Credit Union,* Justice Thomas in no way ratified the *Simpson* Doctrine by opining that he had not altered the Court's zone of interests test. Consequently, I find that the *Simpson* Doctrine is no longer a viable statement of Title VI's statutory standing requirements.[6]

### C. An Unfettered Analysis of Title VI Standing

■■ Having determined that I am no longer bound by the *Simpson* Doctrine, I must determine "whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected … by the statute." *National Credit Union,* 118 S.Ct. 927, 935. Therefore, I must discern the interests arguably to be protected by Title VI and then determine whether Plaintiffs' interests are within them. *See id.*[7]

Section 601 of Title VI provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Fed-

eral financial assistance." 42 U.S.C. § 2000d. Title VI has been interpreted to reflect two purposes: (1) to prevent discrimination by entities which receive federal funds; and (2) to "provide citizens with effective protection against discrimination." *See Chester Residents Concerned for Quality Living v. Seif,* 132 F.3d 925, 936 (3d Cir. 1997) (citing *Cannon v. University of Chicago,* 441 U.S. 677, 704, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)).

The interests arguably to be protected by Title VI, then, are those of persons against whom federally funded programs discriminate. On the face of the Amended Complaint, this is precisely the interest Plaintiffs seek to protect. Indeed, having been freed of the cumbersome yoke imposed by *Simpson* and its progeny, it is clear to me that if these plaintiffs could not seek the protections of Title VI based upon the allegations in the Amended Complaint, then it is doubtful that anyone could have standing. African–American residents of Atlantic City whose homes may be destroyed as a result of a federally funded highway project allegedly located in a discriminatory manner must be within the zone of interests protected by Title VI.[8]

**6.** Judge Padova of the Eastern District of Pennsylvania recently reiterated the *Simpson* Doctrine in dicta. *See Wood v. Cohen,* 1998 WL 88387, *11 n. 15 (E.D.Pa. Mar.2, 1998). Judge Padova's opinion, however, was filed only five days after the Supreme Court's decision in *National Credit Union* and Judge Padova makes no reference to that decision. Consequently, I have little reason to believe that the issues which I address here factored into Judge Padova's statement of Title VI's standing requirements. To the extent that *Wood* could be seen as inconsistent with my interpretation of *National Credit Union,* however, I must respectfully disagree with my colleague.

**7.** The outcome is not controlled, as PILC contends, by *Chester Residents Concerned for Quality Living v. Seif,* 132 F.3d 925 (3d Cir.1997). In that case, Judge Cowen observed in a footnote that the plaintiffs, who were similarly situated to Plaintiffs in this case, were in "the class for whose especial benefit the statute [Title VI] was enacted." *Id.* at 933 n. 10. Once again, however, PILC has taken a quotation out of context and argued that it "controls the outcome" in this case. *See* PILC's Supp. Brief at 11. Judge Cowen spoke only to "the purely legal question of whether a private right of action exists under discriminatory effect regulations promulgated by federal administrative agencies pursuant to Sec-

tion 602 of Title VI of the Civil Rights Act of 1964." *Chester Residents,* 132 F.3d at 927. Judge Cowen never considered standing or jurisdiction. Nevertheless, PILC boldly raises this argument, like so many others, for the first time in its Supplemental Brief. In fact, the only issue which PILC did not address extensively in its Supplemental Brief is *National Credit Union,* the only issue on which I invited discussion. Instead, PILC devotes pages to arguments and authorities such as an unpublished report by the Federal Aviation Administration. Needless to say, the Court finds these gratuitous comments, which PILC should have raised in its original brief, unpersuasive.

**8.** Notwithstanding my decision today, I reject outright PILC's contention that the intended beneficiaries of the Westside Bypass project are the "motoring public." *See* PILC's Supp. Brief at 22. Perhaps PILC is confused by Justice Scalia's recent disapproval of "drive-by jurisdictional rulings." *Steel Co.,* 118 S.Ct. 1003, 1011. At any rate, PILC's conception of automotive standing would not require that a plaintiff allege discrimination in order to seek the protection of Title VI, but rather would subject Defendants to suit by any transient motorist traversing the highways of New Jersey. "Drive-by standing," like drive-by jurisdiction, has no place in our jurisprudence.

Moreover, to the extent that Section 601 itself is unclear, my decision is controlled by the reasonable interpretation of Title VI rendered by the United States Department of Transportation ("USDOT"). In Section 602 of Title VI, Congress specifically directed federal agencies to implement regulations effectuating Section 601. *See* 42 U.S.C. § 2000d–1. "When Congress expressly delegates to an administrative agency the authority to make specific policy determinations, courts must give the agency's decision controlling weight unless it is 'arbitrary, capricious, or manifestly contrary to the statute.' " *ABF Freight System, Inc. v. National Labor Relations Board,* 510 U.S. 317, 324, 114 S.Ct. 835, 127 L.Ed.2d 152 (1994) (quoting *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)); *accord Yeskey v. Commonwealth of Pennsylvania Department of Corrections,* 118 F.3d 168, 170 (3d Cir.1997), *cert. granted,* — U.S. —, 118 S.Ct. 876, 139 L.Ed.2d 865 (1996); *see also Environmental Defense Fund, Inc. v. Costle,* 636 F.2d 1229, 1257 (D.C.Cir.1980) ("Deference to the agency's interpretation is particularly appropriate where, as here, the statute specifically requires the agency to develop implementing regulations.").

Pursuant to the direction of Section 602, the USDOT issued the following regulation:

In determining the site or location of facilities, a recipient or applicant may not make selections with the purpose or effect of excluding persons from, denying them the benefits of, or subjecting them to discrimination under any program to which this regulation applies, on the grounds of race, color, or national origin; or with the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the Act or this part.

49 C.F.R. § 21.5(b)(3). This regulation is not arbitrary, capricious or manifestly contrary to Section 601. *Cf. Chester Residents,* 132 F.3d 925 (finding that an analogous regula-

tion issued by the Environmental Protection Agency provides a private right of action for a disparate impact claim). This interpretation of Section 601 prohibits Defendants from locating a federally funded highway project in a location which produces a disparate racial impact. This is, of course, precisely what Plaintiffs allege in the Amended Complaint. Therefore, I conclude that Plaintiffs' claim falls within the zone of interests protected by Title VI as implemented by the USDOT regulations. Consequently, the order dismissing Plaintiffs' Title VI claim will be vacated.

Although I have concluded that Plaintiffs have standing to pursue their Title VI claim, I intimate no view as to the merits of Plaintiffs' claim, or the relief to which they may be entitled should they prevail. Moreover, I intimate no view as to the merits of Defendants' defenses. This opinion represents neither a victory for Plaintiffs, nor a defeat for Defendants. I have elected to exercise an infrequently used, but extraordinary judicial power and I have done so only after considerable reflection, and only after concluding that my earlier decision in *Bryant I* was no longer viable in light of *National Credit Union.* Given the interests at stake in this case for both Plaintiffs and Defendants, I shall promptly schedule a case management conference with counsel and place this case on an accelerated track.

### III. CONCLUSION

For the reasons set forth above, the Order of dismissal, dated February 17, 1998, will be vacated in part. The Court will enter an appropriate Order and will promptly schedule a case management conference to consider the remaining issues in this case.[9]

### ORDER

This matter having come before the Court on its own motion to reconsider the Order of Dismissal dated February 17, 1998, Stanley

9. In *Bryant I,* I declined to exercise supplemental jurisdiction over Plaintiffs' claim under the Coastal Area Facility Review Act ("CAFRA"), N.J.S.A. 13:19–1 *et seq.* I will allow the parties to address whether I should exercise supplemental jurisdiction over Plaintiffs' CAFRA claim in light of this opinion, notwithstanding the relevant statutory language. *See* 28 U.S.C. § 1367(c)(1) ("The district court may decline to exercise supplemental jurisdiction over a claim ... if ... the claim raises a novel or complex issue of State law.").

C. Van Ness, Esq., and Karen L. Cayci, Esq., Herbert, Van Ness, Cayci & Goodell, appearing on behalf of Plaintiffs; Edward N. Fitzpatrick, Esq., Benjamin Clarke, Esq., and William J. Bailey, Esq., DeCotiis, Fitzpatrick & Gluck, appearing on behalf of Defendant, Mirage Resorts, Inc.; Peter Verniero, Esq., Attorney General of New Jersey, Jeffrey J. Miller, Esq., and Jerry Fischer, Esq., Assistant Attorneys General, and Josh Lichtblau, Esq., Kevin M. Schatz, Esq., and Robert Marshall, Esq., Deputy Attorneys General, appearing on behalf of Defendants, State of New Jersey, New Jersey Department of Transportation and New Jersey Transportation Trust Fund Authority; Thomas E. Monahan, Esq., and Jean L. Cipriani, Esq., Gilmore & Monahan, P.A., appearing on behalf of Defendant, South Jersey Transportation Authority; Theodore W. Geiser, Esq., Patrick J. McAuley, Esq., Liza M. Walsh, Esq., and Mark D. Haefner, Esq., Connell, Foley & Geiser, appearing on behalf of Defendant, Casino Reinvestment Development Authority; and Renee Steinhagen, Esq., Public Interest Law Center of New Jersey, appearing as *amicus curiae;* and,

The Court having considered the briefs submitted by Plaintiffs, Defendants and *amicus curiae,* for the reasons set forth in the Court's OPINION, filed concurrently with this ORDER;

IT IS, on this 18th day of March, 1998, hereby ORDERED that the Order of this Court dismissing Plaintiffs' Amended Complaint, dated February 17, 1998, is VACATED IN PART.